STATE OF CONNECTICUT *v.* ROBERT RINALDI
(14137)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued September 24—decision released November 12, 1991

*Walter H. Scanlon,* for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Corinne Klatt,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is whether the trial court improperly excluded evidence offered by the defendant on the issue of the source of semen found inside the complainant on the night she was allegedly sexually assaulted. After a jury trial, the

defendant, Robert Rinaldi, was convicted of sexual assault in the first degree in violation of General Statutes § 53a-70, sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A).[1] The trial court rendered a judgment sentencing the defendant to a term of imprisonment of fifteen years, suspended after ten years, and placing him on probation for three years. The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3). We reverse and remand for a new trial.

The jury reasonably could have found the following facts. On June 21, 1989, the complainant, who was then fourteen years old, and two friends, Ronald and Colleen, were drinking beer and rum at the Waterbury apartment of the complainant's father. The complainant spoke by telephone to another friend, Dino, and arranged to meet him. The three friends got a ride to Dino's house and then they all walked to Fairlawn Park. The complainant and Dino soon left the other

---

[1] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with a person under thirteen years of age.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

General Statutes § 53a-71 provides in relevant part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

General Statutes § 53a-92 provides in pertinent part: "(a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

two and went to the rear of the park where they remained alone for approximately fifteen minutes to one-half hour. After their reappearance, Dino departed, leaving the complainant upset. The other three then returned to Dino's house.

While the three friends were standing in front of Dino's house, the defendant and a male passenger[2] drove by in the defendant's sports car. The defendant stopped his car and spoke with Ronald, with whom he was acquainted. At some point, the complainant's father also drove up in his car. After an argument between the complainant and her father, the complainant ran and hid behind some bushes on the side of Dino's house. Her father then drove away.

The defendant subsequently agreed to drive the three friends home. They got into the back seat of the car and the defendant drove to a nearby gas station, where the complainant's friends got out of the car. The complainant also tried to leave, but was forcibly prevented from doing so by the passenger in the defendant's car. As the car departed, the complainant screamed for help. Her friends chased the car but were unable to catch it. Two patrons at the gas station also noticed the car and heard the complainant screaming.

The defendant drove the car to a parking lot, where he and his passenger engaged in forced sexual intercourse with the complainant. They then threw the com-

---

[2] The male passenger was also arrested and charged with sexual assault in the first degree in violation of General Statutes § 53a-70, sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A). He preceded the defendant to trial and, just prior to the conclusion of his trial, entered guilty pleas under the *Alford* doctrine to charges of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and unlawful restraint in the first degree in violation of General Statutes § 53a-95. See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

plainant into the back of the car and drove to another parking lot. The witnesses at the gas station, who had once again spotted the defendant's car, followed the car into the second parking lot and watched as the complainant was thrown from the defendant's car. The complainant's clothes had been partially removed and she told the witnesses that she had been raped. The complainant was returned to her home and, shortly thereafter, was taken by her father to Waterbury Hospital.

At the hospital, the examining physician found a cigarette burn on the complainant's cheek, a superficial laceration on her right forearm, and some grass in her pubic hair and near the entrance of her vagina. The complainant's mother, who was with her daughter at the hospital, noticed grass on her daughter's buttocks. A screening for alcohol and drugs indicated the presence of alcohol, marihuana and cocaine in the complainant's system. A technician employed by the Connecticut state police forensic laboratory analyzed the components of a sex crime kit prepared by the examining physician and determined that semen was present on the vaginal smear and in the crotch area of the complainant's underpants. Because the defendant, his passenger and the complainant all had the same blood type, the technician could not determine or identify the source of the semen.

The jury also heard the contrary testimony of the defendant, who denied having had sexual intercourse with the complainant at any time. According to the defendant, in the confrontation involving the complainant's father at Dino's house, the father threatened to shoot the defendant and his friend if they went near his daughter or his house. The defendant testified that after the complainant's friends got out of his car at the gas station, the complainant asked him to drive her home. As he drove toward her home he noticed a car

following closely behind him. The driver was blinking the car's lights and honking its horn. Believing that the car belonged to the complainant's father, and recalling his previous threats, the defendant pulled into a parking lot, dropped the complainant off and drove away. The jury apparently disbelieved the defendant, because it convicted him on all counts.

In his appeal, the defendant raises three claims. He maintains that he is entitled to a new trial because the trial court improperly: (1) precluded the defendant from eliciting evidence regarding the source of the semen found in the complainant; (2) precluded the defendant from eliciting evidence regarding a comparison of a pubic hair found on the complainant's blouse; and (3) ordered defense counsel not to refer in his summation to the possibility that the complainant had had sexual intercourse with Dino at the park. We agree with the first of these claims.

I

At trial the defendant moved for permission to present evidence that the complainant had engaged in sexual intercourse with someone other than the defendant on the night of the alleged sexual assault. He offered this evidence pursuant to General Statutes § 54-86f,[3] known as the Rape Victims Shield Law.

---

[3] "[General Statutes] Sec. 54-86f. ADMISSIBILITY OF EVIDENCE OF SEXUAL CONDUCT. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion

Although this statute limits the admissibility of evidence of a sexual assault victim's prior sexual conduct, such evidence is admissible under subsection (1) of the statute "on the issue of whether the defendant was, with respect to the victim, the source of semen." In compliance with § 54-86f, the defendant submitted a written motion containing an offer of proof. At the hearing on this motion conducted outside the presence of the jury, the defendant presented the proposed testimony of the complainant's friend Colleen concerning events that transpired on the evening of June 21, 1989.

## A

Colleen testified at the hearing that she overheard the complainant tell Dino over the telephone that she wanted to have sexual intercourse with him.[4] She further testified that after she, the complainant, Ronald and Dino had walked to Fairlawn Park, Dino and the complainant had kissed and gone off by themselves toward a slide in the back of the park. They remained alone together for approximately twenty minutes to one-half hour. Colleen testified that she subsequently called for the complainant, who emerged from the back of the park with her pants unbuttoned. After Dino had walked away, the complainant told Colleen: "I finally

---

to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

[4] The specific words used by the complainant as testified to by Colleen were, "I want to fuck you" or "I want to fucking do you."

got it." In response to Colleen's question to the complainant: "Are you happy now?" the complainant answered, "Yes."[5]

The trial court heard the proffered oral testimony and then ruled upon each paragraph of the defendant's written offer of proof. The court excluded the testimony "that the victim told [Colleen] . . . how bad she wanted to get laid or—and the language she used here today" as not constituting evidence of sexual conduct. It ruled admissible the proffered testimony that the complainant spoke with Dino on the telephone, made plans to meet him, met him, walked to the park with him and walked into the woods at the back of the park alone with Dino. The court excluded testimony of the complainant's statement, "I finally got it," ruling that it was hearsay evidence, and excluded testimony that the complainant's pants were unbuttoned as "not evidence that there was any semen transferred from Dino to the victim." The defendant took an exception to the court's rulings. Following a recess, the trial court further stated that it found the excluded evidence to be more prejudicial than probative.

The defendant claims on appeal that the exclusion of the proffered evidence violated his right to present

---

[5] The defendant's written offer of proof on which the court ruled differed somewhat from the defendant's oral offer of proof, which reflected the testimony of Colleen. In his motion, the defendant offered to present the following evidence: "1. Testimony of Colleen . . . that the victim told [Colleen] that on or about the evening of June 21, 1989, 'how bad she wanted to get laid.'

"2. Thereafter, the victim telephoned a male by the name of Dino and made plans to meet him somewhere on Frost Road, Waterbury, Connecticut.

"3. That the victim went to Dino's house; knocked on the door; Dino came out and the pair walked to a park.

"4. Therefore, Dino and the victim walked into the woods at the back of this park.

"5. After awhile [Colleen] called for the victim and she came out of the wooded area saying, 'I finally got it.' Her pants were half down and her shirt was unbuttoned when she came out."

a defense and to confront witnesses against him as guaranteed by the sixth and fourteenth amendments to the United States constitution; *Pointer* v. *Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); and by article first, § 8 of the constitution of Connecticut. We decline, however, to reach the defendant's constitutional claims because we conclude that the trial court's rulings violated § 54-86f. " 'We thus follow the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions.' " *State* v. *Gold*, 180 Conn. 619, 639, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980), citing *Pepin* v. *Danbury*, 171 Conn. 74, 88, 368 A.2d 88 (1976).

The trial court's first conclusion was that the proffered statement "I want to fuck you" or "I want to fucking do you" did not meet the requirements of § 54-86f[6] because it did not provide evidence of sexual conduct. The court's ruling was, in effect, that the statement was insufficiently relevant to the issue of the complainant's alleged sexual conduct with Dino in the park. "One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." (Internal quotation marks omitted.) *State* v. *Kelly*, 208 Conn. 365, 376, 545 A.2d 1048 (1988); *State* v. *Mastropetre*, 175 Conn. 512, 521, 400 A.2d 276 (1978); *State* v. *Lombardo*, 163 Conn. 241, 243, 304 A.2d 36 (1972). To be relevant, the evidence need not exclude all other possibilities; it is sufficient if it tends to support the conclusion, even to a slight degree. *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987); *State* v. *Briggs*, 179 Conn. 328, 426 A.2d 298

---

[6] Had the trial court been correct in its conclusions, this evidence would not have been barred by General Statutes § 54-86f as that statute excludes only the introduction of "evidence of sexual conduct."

(1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980). "Although the trial court has wide discretion in its rulings on the relevancy of evidence . . . its rulings will be reversed if the court has abused its discretion or where injustice appears to have been done." *State* v. *Echols,* 203 Conn. 385, 393, 524 A.2d 1143 (1987); *State* v. *Smith,* 198 Conn. 147, 157, 502 A.2d 874 (1985).

We disagree with the trial court's characterization of this evidence and conclude that it is indeed evidence of sexual conduct. Section 54-86f encompasses inferential as well as direct evidence of sexual conduct. There is a sufficient relationship between the proffered evidence and the sexual conduct sought to be proved that a reasonable juror could infer from the statement that Dino and the complainant had engaged in sexual intercourse on June 21, 1989. This inference is reinforced by other facts in evidence, such as the appearance of the complainant's clothing when she emerged from the rear of the park and the discovery of the presence of grass on her buttocks, and in her pubic hair and vagina found during the medical examination.

Presumptively, § 54-86f excludes evidence of the sexual conduct of the victim of a sexual assault. The question therefore is whether the evidence in this case falls within one of the exceptions contained in the statute. Before the defendant made his offer of proof, the state had introduced evidence that an analysis of the vaginal swab taken at the hospital on the night of the alleged sexual assault indicated the presence of sperm in the complainant's vagina. The defendant expressly offered Colleen's testimony "on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury." General Statutes § 54-86f (1). Under *State* v. *Mastropetre,* supra, 519, the proffered evidence of sexual activity is admissible if it offers an explanation for the source

of the semen found in the complainant. Colleen's testimony could have persuaded the jury to infer that the semen was transferred when the complainant and Dino had engaged in sexual intercourse. Because subsection (1) of the rape shield statute specifically exempts evidence offered on the source of semen when that question becomes an issue at trial, the admissibility of Colleen's statement was not automatically barred by that statute.

We turn now to the proffered testimony regarding the appearance of the complainant's clothing when she emerged from the rear of the park with Dino. The court apparently excluded this testimony as irrelevant to the issue of the source of the semen. We disagree. Like the testimony regarding the complainant's telephone conversation with Dino, the proffered evidence that the complainant's pants were unbuttoned upon her emergence from the rear of the park was relevant to the issue of whether she and Dino had engaged in sexual intercourse. Again, a jury could reasonably infer that this act of sexual intercourse resulted in the transfer of semen to the complainant. In light of the fact that the state had introduced the evidence of the semen found inside the complainant's vagina, the proffered testimony fell within the exception delineated in subsection (1) of § 54-86f.

The trial court buttressed its decision to exclude the proffered evidence by a finding, as authorized by § 54-86f, that the probative value of the evidence was outweighed by its prejudicial effect on the victim. "[T]he determination of whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court judge and is subject to reversal only where an abuse of discretion is manifest or injustice appears to have been done." *State* v. *Braman,* 191 Conn. 670, 681–82, 469 A.2d 760 (1983); *State* v. *Tucker,* 181 Conn. 406, 416, 435 A.2d 986 (1980).

This court has previously enumerated situations in which the potential prejudicial effect of relevant evidence would counsel its exclusion. Evidence should be excluded as unduly prejudicial: (1) where it may unnecessarily arouse the jury's emotions, hostility or sympathy; (2) where it may create distracting side issues; (3) where the evidence and counterproof will consume an inordinate amount of time; and (4) where one party is unfairly surprised and unprepared to meet it. *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982). The proffered testimony does not pose any of these dangers.

The prejudice sought to be avoided through the rape shield statute extends, however, beyond those listed above. When balancing the probative value of evidence of a sexual assault victim's prior sexual conduct against its prejudicial effect on the victim, the court should also consider whether the evidence invades the victim's sexual privacy, whether it is unnecessarily harassing, and whether it will subject the victim to undue embarrassment. See *State* v. *Williams,* 20 Conn. App. 263, 270, 565 A.2d 1365 (1989).

The evidence offered in this case is highly probative of a critical piece of evidence introduced by the state, namely the presence of semen in the complainant following the alleged sexual assault. Colleen's testimony could greatly have lessened the impact the state's evidence had on the jury. The centrality of this issue distinguishes this case from others in which sexual conduct evidence has been excluded. See, e.g., *State* v. *Franko,* 199 Conn. 481, 484–85, 508 A.2d 22 (1986) (question whether complainant was a virgin prior to sexual assault properly excluded as irrelevant); *State* v. *Mastropetre,* supra, 514 (question whether complainant had had sexual relations with anyone prior to sexual assault properly excluded as irrelevant). A more closely analogous case is *Demers* v. *State,* 209 Conn. 143, 547 A.2d

28 (1988), in which this court concluded that evidence of a victim's prior prostitution arrest was admissible under subsection (4) of § 54-86f as it was relevant to the substantive issue of consent raised by the defendant. In this case, similarly, Colleen's testimony would have shed light on a substantive issue in the case.

In weighing the possible prejudicial effect of the proffered testimony, the trial court should have also considered what the testimony *did not* purport to establish. The defendant was not impugning the complainant's character in front of the jury by introducing lurid details of prior sexual behavior. Rather, it was offered to provide an alternative explanation for an important piece of objective evidence introduced by the state. This is precisely the type of evidence the legislature intended to allow an accused sexual offender to offer in his defense. We therefore conclude that the trial court abused its discretion, in violation of § 54-86f, by excluding as prejudicial the proffered testimony offered by the defendant.

The state urges us to conclude that any error in excluding this testimony was harmless. "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the error." *State* v. *Flanders,* 214 Conn. 493, 502, 572 A.2d 983, cert. denied,     U.S.     , 111 S. Ct. 260, 112 L. Ed. 2d 217 (1990); *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980). The defendant must demonstrate "that the erroneous action of the trial court would have been likely to affect the result." *State* v. *Flanders,* supra; *State* v. *Castonguay,* 218 Conn. 486, 505, 590 A.2d 901 (1991).

We are persuaded that the exclusion of Colleen's testimony, in all likelihood, affected the jury's verdict against the defendant. The state introduced into evidence the presence of semen to provide crucial inde-

pendent and objective proof that sexual intercourse had occurred. This evidence was critical to corroborate the claimed sexual assault. Presented with diametrically opposed versions of what occurred on June 21, 1989, between the complainant and the defendant, the jury very likely gave great weight to the fact that semen was detected during the examination of the complainant. Without any evidence from which to infer that the complainant might have had sexual intercourse, only shortly before, with someone other than the defendant, it is probable that the jury would have disbelieved the defendant's denial of sexual intercourse with the complainant. Disbelief of the defendant on this crucial issue would probably have persuaded the jury to disbelieve the defendant's testimony in its entirety, and to attach sufficient credence to the alternative explanation of what had transpired to find the defendant guilty beyond a reasonable doubt. We therefore conclude that the trial court's error was harmful. Because the exclusion of this testimony was likely to have affected the jury's verdict on the three charges of which the defendant was convicted, we reverse the trial court's judgment as to all charges and remand for a new trial.[7]

---

[7] The state presents an alternative basis upon which we could uphold the court's ruling excluding testimony of the complainant's statement to Dino "I want to fuck you" or "I want to fucking do you." It claims that this evidence is inadmissible hearsay. This court has long recognized that a declaration of present intention to do a particular act in the near future, if made in good faith and not for self-serving purposes, is admissible to prove that the act was in fact performed. *State* v. *Perelli,* 125 Conn. 321, 324–25, 5 A.2d 705 (1939) (testimony that the deceased said he was going to New Haven is admissible to prove that he went to New Haven); see also *Spencer's Appeal,* 77 Conn. 638, 642, 60 A. 289 (1905) (testimony that testator had stated that he did not want to leave his wife anything at his death was admissible to show that it was unlikely that he left his entire estate to her). Testimony regarding the complainant's statement is therefore admissible under an exception to the hearsay rule.

## B

The defendant further claims that the trial court improperly excluded Colleen's testimony that the complainant made the statement "I finally got it" when she emerged from the rear of the park. The court disallowed this testimony, not because it was barred by the rape shield statute, but rather because it was inadmissible hearsay. Hearsay is an out-of-court statement offered into evidence to establish the truth of the matters contained therein. *State* v. *Cruz,* 212 Conn. 351, 356, 562 A.2d 1071 (1989). The trial court ruled that this statement was offered for the purpose of proving the truth of the defendant's allegations that the complainant had engaged in sexual intercourse with Dino. The defendant took an exception to the trial court's ruling.

The defendant now contends that, although hearsay, the statement constituted a spontaneous utterance, a recognized exception to the hearsay rule. A key requisite to this exception is that the statement must follow a startling event, that is, "one of such a nature as to produce nervous excitement in the declarant and render his utterances spontaneous and unreflecting." C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed. 1988) § 11.11.2, pp. 373–74. Without more details as to what actually transpired between Dino and the complainant in the park, we cannot determine whether the requirements of this exception have been met. Thus, upon the basis of the record before us, we conclude that the trial court did not abuse its discretion in excluding the proffered testimony concerning the statement on hearsay grounds.

## II

Although we have concluded that a new trial will be necessary, we will address the defendant's second claim

because the issue may arise at retrial. At trial, the defendant sought to have Mary Beth Guman, a state police laboratory technician, testify that a pubic hair taken from the complainant's blouse possessed characteristics similar to a pubic hair sample taken from Dino. The defendant offered the evidence as tending to show that Dino had committed the crime for which the defendant was charged. The defendant asserted that this piece of evidence was admissible, regardless of whether it related to sexual conduct, because it would have supported charging Dino with a violation of General Statutes § 53a-71 (a) (1), which criminalizes engaging in sexual intercourse with another person under the age of sixteen. The court ultimately excluded the evidence as irrelevant and speculative.

We agree with the trial court's ruling that the evidence was inadmissible on the ground on which it was offered. It was entirely reasonable for the trial court to determine, in the exercise of its discretion, that evidence of an alleged violation of § 53a-71 (a) (1) by Dino had no relevance to whether the defendant violated § 53a-71 (a) (1) at a different time and in a different place.[8] The rules of relevancy govern the presentation and admissibility of evidence tending to show that a

---

[8] The trial court's ruling on the ground of relevancy may well have been grounded at least in part on the confusing argument offered by the defendant for the admissibility of this evidence. In contrast to the testimony of Colleen proffered pursuant to General Statutes § 54-86f, the defendant's counsel specifically advised the court that testimony regarding the similarity of the pubic hair found on the complainant's blouse had "nothing to do with the rape shield statute." When asked by the court whether the defendant was offering the evidence "as one of the exceptions to the rape shield statute?" the defendant's counsel replied, "No, I'm not." The defendant continues to put forth this argument to this court. In his appellate brief, the defendant asserts that the evidence of the pubic hair was "not technically evidence of [sexual] conduct that would be afforded protection under § 54-86f." The defendant has not explained how this evidence could tend to show that someone else committed the crime with which he is charged without being some evidence of sexual conduct which is governed by § 54-86f.

third party, and not the defendant, committed the crime with which the defendant is charged. *State* v. *Milner,* 206 Conn. 512, 517, 539 A.2d 80 (1988); *State* v. *Echols,* 203 Conn. 385, 392, 524 A.2d 1143 (1987). To be admissible, the evidence must show more than motive or bare suspicion; it must directly connect the third party to the crime charged. *State* v. *Milner,* supra. "Generally, the evidence must demonstrate that guilt in the other party is inconsistent with guilt in the accused." *State* v. *Delossantos,* 211 Conn. 258, 270, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). The trial court did not abuse its discretion in ruling as it did.

The question that remains is whether we should decide, at this juncture, the admissibility of the pubic hair comparison on a ground other than that raised by the defendant at trial. Such an alternative would not, of course, invalidate the trial court's ruling. " 'Error does not lie in the exclusion of evidence claimed on an inadmissible ground even though it might have been admissible had it been claimed on another and different ground.' " *Mays* v. *Mays,* 193 Conn. 261, 268, 476 A.2d 562 (1984), quoting *Johnson* v. *Rockaway Bus Corporation,* 145 Conn. 204, 210, 140 A.2d 708 (1958). At a retrial in which the court admits the evidence on the issue of the source of the semen discussed in Part I of this opinion, the defendant might, however, offer this testimony to buttress his assertion that the complainant had engaged in sexual conduct with Dino.[9] In such an event the trial court will have to exercise its discretion to determine the admissibility of that evidence on this ground.

[9] If at retrial the state does not offer the presence of semen into evidence, the source of the semen is no longer an issue and Colleen's testimony as well as the pubic hair comparison would not be admissible under subsection (1) of General Statutes § 54-86f.

## III

We decline to reach the defendant's third claim of error, which concerns the court's refusal to allow the defendant to suggest in his closing argument that the complainant and Dino had engaged in sexual intercourse prior to the alleged sexual assault. Our ruling that evidence of such conduct should not have been omitted makes it unlikely that such an issue will arise at retrial.

The judgment is reversed and the case is remanded for a new trial in accordance with this opinion.

In this opinion the other justices concurred.