STATE OF CONNECTICUT *v.* CARLETON SMITH
(AC 23414)

Dranginis, Flynn and Dupont, Js.

Argued April 19—officially released September 14, 2004

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Proloy K. Das*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Kimberley N. Perrelli*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Carleton Smith, was charged in a twelve count information with aggravated sexual assault in the first degree in violation of General Statutes §§ 53a-70a (a) (4) and 53a-70 (a) (1), sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), two counts of sexual assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 (a) and 53a-70 (a) (1), one count each of conspiracy to commit sexual assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-70 (a) (1), and attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-

49 (a) (2) and 53a-70 (a) (1), two counts each of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2), and one count each of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (1) and failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1). The jury found the defendant not guilty of conspiracy to commit sexual assault in the first degree and attempt to commit sexual assault in the first degree, and guilty on the other ten counts. The defendant received a total effective sentence of thirty-eight years imprisonment.

The defendant claims that the court improperly (1) denied his motion for an evidentiary hearing pursuant to the rape shield statute, General Statutes § 54-86f, (2) precluded him from offering evidence that semen found on the complaining witness contained DNA that was not his or the DNA of two other men allegedly involved in the sexual assaults, (3) failed to disclose to the defendant relevant materials from the department of children and families (department) after an in camera review, and (4) allowed the state to call his former attorney as a witness on the charge of failure to appear in the first degree. Additionally, the defendant claims that he should be given a new trial because of prosecutorial misconduct that permeated the entire trial, including closing argument.[1]

We conclude that the defendant is entitled to a new trial on the sexual assault and risk of injury charges because he should have been allowed to offer evidence that semen was found on the complainant and on her clothing, and that it was not his or that of either of the

---

[1] The first, second, and third claims are discussed together in part II. The fourth claim is discussed in part III. In view of our conclusion that a new trial is necessary, we do not reach the fifth claim.

other two men allegedly involved in the assault. We also conclude that the defendant was convicted properly of the charge of failure to appear in the first degree.

## I

## BACKGROUND

The complaining witness, a thirteen year old runaway girl, T,[2] testified that she was walking on a Hartford street when she was asked if she "wanted to chill" with three men in a car, driven by a man she later identified as the defendant. She did not know any of them, but got into the car. The defendant drove to a package store where the men bought liquor. All of them, including the minor, smoked marijuana and drank as the defendant drove. Eventually, they went to the Travelers Inn in East Hartford where the driver rented a room and all of them went into it.

T further testified that the driver of the car pushed her onto the bed and removed her clothing. He had vaginal sexual intercourse with her while the other two men held her arms. Each man in turn had vaginal sexual intercourse with her and later each had vaginal sexual intercourse from behind her while she was forced to lie on her stomach.[3] T also testified that the defendant tried to make her perform fellatio on him. After the trio had ended their sexual assaults, she was driven to a park. One of the men, not the defendant, got out of the car with her, put a gun to her head and said he would kill her if she told anyone about what had happened. She called the police from a nearby laundromat, however, and originally stated that one man had raped her

---

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] In an interview with the police prior to trial, T stated that the second three acts of intercourse were penile-anal and that none of the men wore condoms.

in a park. She later told the police of her encounter with the three men.[4]

T identified the motel at which the assaults had occurred, and the police, after investigation, discovered that the defendant had rented a room there on the same day as that of the assaults described by T. She identified that room to the police as one of four possible rooms that were the site of the assaults. At first, T failed to identify the defendant as one of her assailants from a photographic array, but a few days later did identify him from the array. Later, T made positive photographic identifications of her other two assailants, after the defendant had identified the other two men to the police as having been with him on the day in question. T, in prior statements to the police, stated that she had had sexual intercourse with others during the days immediately preceding the events of this case.

The defendant, having been read his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), told a detective that he had picked up a girl when he was driving around Hartford with two other men he identified and that he had gone to the Travelers Inn and rented a room. He and the unidentified girl entered the room where he had consensual sexual intercourse with the girl, during which he used a condom. He then left and remained outside the room while the other two men then entered the room. He did not admit that the girl was T and was not provided with T's name, nor was he asked to identify a photograph of her.

The defendant was released on bond after his arrest. Three months later, his attorney called the contact telephone number the defendant had given him to inform

---

[4] The other two purported assailants originally were arrested, but the charges against them later were nolled.

the defendant of his obligation to be in court at a specific date and time. The attorney did not speak with the defendant personally, but left the information with the defendant's sister. The defendant did not appear on that date or on the date to which the case was continued. A rearrest warrant was issued, and the defendant was located eventually in North Carolina and subsequently surrendered to authorities in Hartford. He was then arrested on a charge of failure to appear in the first degree. Prior to trial, the court granted both the defendant's motion to dismiss his attorney and the attorney's motion to withdraw from representation of the defendant. The defendant did not testify at trial. His defense was misidentification as the assailant.

## II

## PRECLUSION OF EVIDENCE OF SEMEN

In a trial for sexual assault, a defendant is not allowed to introduce evidence of sexual conduct of the complainant except in certain instances as provided by statute. See General Statutes § 54-86f. The defendant sought an evidentiary hearing to determine if evidence of certain sexual conduct of T would be admissible pursuant to subdivisions (1), (2), or (4) of the exceptions embodied in the rape shield statute.[5] The trial court denied

[5] General Statutes § 54-86f provides: "Admissibility of evidence of sexual conduct. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such

the defendant's motion to hold the hearing, determining that the introduction of the claimed conduct did not meet any of the exceptions mandated by the statute and that the probative value of the evidence did not outweigh its prejudicial effect.

"The rape shield statute excludes evidence of prior sexual conduct of the victim of a sexual assault, unless one of the statutory exceptions is satisfied. . . . The statute was enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault. . . . Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her from undue harassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. . . . Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters." (Citations omitted; internal quotation marks omitted.) *State* v. *Christiano,* 228 Conn. 456, 469–70, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994).

The remarks of Senator Howard T. Owens, Jr., further indicate what the legislature intended to accomplish with the passage in April, 1982, of the bill that created the rape shield statute. "What this Bill really does is

hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

and when [you] get to the heart of it, is that we want to make certain that when someone is called upon, testifying in a criminal prosecution of serious sexual offenses or rapes specifically, that they can't get into the woman's background; they can't ask her whether or not she uses a diaphragm. They can't ask her whether or not she is involved in birth control; whether or not she's had sexual—how many times she's been married, what her customs are and what her preferences are to sex; all of these types of questions that have no relevancy to the situation before the Court; whether or not in fact a rape occurred. The history of it is that there was a case law that kind of left this with some ambiguity and we wanted to bring this to a head." 25 S. Proc., Pt. 10, 1982 Sess., pp. 3249–50, remarks of Senator Howard T. Owens, Jr.

The defendant's offer of proof for an evidentiary hearing, pursuant to § 54-86f was extensive. To obtain the evidentiary hearing, the defendant's motion relied on subdivisions (1), (2) and (4) of the statute, and the federal constitution, including his fifth, sixth and fourteenth amendment rights to confront the witness against him. The defendant's claim that a prior false allegation by T should be introduced to the jury related to the credibility of T. The defendant's claim that her sexual conduct, as evidenced by the presence of semen of other persons on her body and clothing, related to his defense of misidentification. According to the defendant, the evidence of prior sexual encounters, as evidenced by the presence of other persons' semen on the body and socks of T, belied her testimony of sexual assault by the defendant at the motel and verified his defense that he was not involved in any sexual conduct with her at the motel. The defendant's claim that T had made a prior false allegation of sexual assault against another person was unrelated to the defendant's claim of misidentification.

The question is whether the first, second or fourth exception to § 54-86f would trigger the need for an evidentiary hearing to determine the admissibility of evidence of the allegedly prior false accusation of sexual assault or the introduction of the evidence of other persons' semen on T's body and clothes.

To establish the necessity of an evidentiary hearing, the defendant made an offer of proof in which he first attempted to attack the credibility of T by showing that a prior complaint of sexual assault by T was false. See *State* v. *Manini*, 38 Conn. App. 100, 108–109, 659 A.2d 196, cert. denied, 234 Conn. 920, 661 A.2d 99 (1995). The record reflects that T had made an allegation of sexual abuse by her father, that she was pressured by family members to recant that accusation and that her father had pleaded guilty to risk of injury to a child under the *Alford* doctrine stemming from T's allegations. See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). On the basis of those facts, the defendant failed to demonstrate the falsity of T's allegation and, therefore, should not have been allowed to introduce any evidence relating to it to attack her credibility. Its relevance, or materiality under subdivision (2) of § 54-86f, was minimal and not sufficient to pierce the rape shield statute. Furthermore, after an in camera inspection by this court of the department's files in question relating to the accusation, we agree with the trial court that the files do not contain any information that would allow the shield of § 54-86f to be pierced. See *State* v. *Gainey*, 76 Conn. App. 155, 161–62, 818 A.2d 859 (2003).

The defendant also wanted to introduce into evidence expert testimony about the result of DNA tests, which indicated that he and the other two men with him on the day of the assault on T had been excluded as the source of semen found on T's socks and anus. The state claimed that the evidence was inadmissible because it

was irrelevant. The state argued that it did not intend to introduce any evidence of semen found on T's person in its prosecution of the crimes and that the defendant therefore did not need to offer evidence of whether he was the source of any semen, as permitted under the exception embodied in § 54-86f (1). The court determined that the evidence was only slightly and tangentially relevant and, in the exercise of judicial discretion, denied the defendant an evidentiary hearing.

The court, in exercising its discretion, discussed relevancy in terms of § 54-86f (1), but not (4), although it was aware that the defendant had cited subdivision (4) in the motion for an evidentiary hearing. The defendant claims that he should have obtained an evidentiary hearing under either subdivision. To the extent that the defendant did not preserve his claim under subdivision (4) adequately, however, he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We grant such review because the issue is constitutional and the record is extensive. See id.

The defendant's offer of proof as to his claim largely consisted of the testimony of an expert witness, a criminalist. During the defendant's offer of proof, the expert, Michael S. Adamowicz, a criminalist with the state police forensic science laboratory, stated that sperm heads were found on T's socks and on swabbings from her anus, and that sperm heads carry DNA. He further testified that no material found inculpated the defendant or the other two men. He also stated that the "sperm rich fraction of the anal swabs, that is—that profile is a mixture. It is a mixture of at least two people. Beyond two people, I can't be certain. . . . Again, the defendants are . . . eliminated as being any of those potential contributors. . . . There are at least two. I'm not saying that there absolutely are. There could be more. . . . We detected a Y chromosome in that mixture, indicating that there is some male in there. . . .

None of them [the defendant and the other two men] could have contributed to that mixture [the sperm rich fraction cutting of the socks]." That evidence was not heard by the jury.

Although the court did not order an evidentiary hearing, it determined that the expert could not testify about anything that would violate the restrictions of the rape shield statute, § 54-86f, but ruled that the witness would be allowed to testify in the presence of the jury that the defendant and the other two men were excluded as the source of any genetic profiles detected on T. During the expert's testimony to the jury, the defendant was allowed to introduce a DNA report that stated that three known samples of blood, the defendant's and that of the two other men, eliminated them as the source of evidence submitted to the state police forensic science laboratory. The report, however, did not mention the particular source of the tested items or mention the word "semen." No indication was given to the jury that someone else's sperm heads or semen were found on the body or clothing of T.

According to the defendant, the purpose of his claim, which is that the expert testimony should have been presented to the jury, was to establish the defense of misidentification, rather than to test the credibility of T. That purpose involves the defendant's constitutional right to present a defense and the right to confront the witnesses against him. The ultimate question is whether evidence that shows the presence of another person's or persons' semen on T's body and clothing, although evidence of her sexual conduct with others, which evidence ordinarily is prohibited by the rape shield statute, is admissible nevertheless to attempt to show the misidentification of the defendant as the person who sexually assaulted T. The subsidiary question we must answer is whether the defendant's offer of proof entitled

him to an evidentiary hearing under either § 54-86f (1) or (4).

A number of cases are instructive in our determination of whether the court abused its discretion in rejecting the defendant's offer of evidence of the presence of semen from other persons on T's body and socks. In *State* v. *Rinaldi*, 220 Conn. 345, 354–55, 599 A.2d 1 (1991), our Supreme Court held that the rejection of a defendant's offer of evidence of the presence of semen, pursuant to the exception embodied in § 54-86f (1), was an abuse of discretion because it likely affected the verdict, which, accordingly, required a new trial. The court did not reach the question of whether subdivision (4) would have provided a similar exception.[6] In that case, unlike in the present case, the state had offered evidence of the presence of sperm in the complainant's vagina, although the source of the sperm could not be specifically identified. Id., 349. On appeal in *Rinaldi*, the defendant's offer of the statements made by another witness and the appearance of the complainant's clothing on the day of the alleged assault was deemed relevant by the Supreme Court to the issue of whether the defendant was the source of the semen that had been found. In concluding that the probative value of the evidence offered in that case outweighed any potential prejudicial effect, the *Rinaldi* court relied on *Demers* v. *State*, 209 Conn. 143, 547 A.2d 28 (1988). In *Demers*, the Supreme Court concluded that the proposed "evidence, at the very least, would be admissible under sub[division] (4) of the rape shield statute"; id., 160; noting that the court need not address the potential applicability of the subdivisions (1) through (3) of § 54-86f.

---

[6] The *Rinaldi* court did not reach the defendant's constitutional claims in view of its finding of a violation of General Statutes § 54-86f (1). *State* v. *Rinaldi*, supra, 220 Conn. 353.

In this case, we conclude, as did the *Rinaldi* court, that subdivision (1) of § 54-86f would allow the admission of the evidence, despite the fact that the state did not intend to produce any evidence of semen on the body of T. The defendant attempted to offer evidence of sexual conduct of T "on the issue of whether the defendant was, with respect to the victim, the source of semen . . . ." General Statutes § 54-86f. Section 54-86f (1) does not specify that the evidence offered by the defendant may be rebuttal evidence only and specifically refers to evidence offered by the defendant. A defendant would not offer evidence that showed that he was the assailant, and the state would not offer evidence that indicated that a defendant was not the assailant. To prevent a defendant such as this defendant from introducing the evidence would render subdivision (1) meaningless. If the defendant's ability to introduce that type of evidence is governed by whether the prosecution chooses to offer it, that would preclude a defendant from asserting a defense of misidentification. It has little to do with the complainant's use of birth control measures, promiscuity, frequency of sexual conduct, sexual background or preferences as to sexual activity, as described by Senator Owens on passage of the bill that created the rape shield statute. It was relevant to the establishment of the identity of T's assailant rather than to the general unchaste character of T as prohibited by the rape shield statute. See *State* v. *DeJesus*, 270 Conn. 826, 839, 856 A.2d 345 (2004).

We also conclude, as the *Demers* court did, that if we analyze the admissibility of evidence pursuant to § 54-86f (4), the defendant's offer of proof would entitle him to an evidentiary hearing.

If the evidence of the presence of semen on T's person was "so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights"; General Statutes § 54-86f (4);

subdivision (4) of § 54-86f would provide him with the right to an evidentiary hearing, even if subdivision (1) did not. "Subdivision (4) of the rape shield statute codifies constitutional principles." *State* v. *Christiano,* supra, 228 Conn. 471. "The determination of whether the state's interests in excluding evidence must yield to those [competing constitutional interests] of the defendant is determined by the facts and circumstances of the particular case." Id., 470. If the evidence is relevant to and probative of the defendant's lack of guilt, that is, his right to establish a full defense, the protection to victims given by the rape shield statute must yield to that constitutional right of the defendant. *State* v. *Cuesta,* 68 Conn. App. 470, 476, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002); see also *State* v. *Christiano,* supra, 474.

A defendant's right to present a defense under the sixth and fourteenth amendments is violated if reliable scientific evidence, namely, that hair and fingerprints at the crime scene are not that of the defendant, is excluded from the jury's consideration. *State* v. *Cerreta,* 260 Conn. 251, 262, 796 A.2d 1176 (2002). In such a case, a judgment of conviction following a verdict of guilty must be reversed and a new trial ordered if the state fails to establish that the constitutional violation was harmless beyond a reasonable doubt.

In the present case, the evidence the defendant sought to have admitted would not exonerate him unequivocally, but it would be relevant and central to his claim that he was misidentified as the complainant's attacker. The exclusion of the evidence would interfere with his right to use a defense of misidentification and, therefore, could not be harmless. Id., 265. When the excluded evidence is relevant to the primary issue at trial, namely, the identity of the attacker, and central to the defendant's plea of not guilty and is the most compelling evidence available to the defendant, it is

crucial to his defense, and the elimination of such evidence conflicts with the defendant's right to present a defense. Id., 264.

In this case, the state was willing to stipulate that the defendant's semen and that of the two other purported assailants was not found on T, but was not willing to allow the jury to learn that other persons' semen was found on her and on her clothing. The fact that physical evidence, the semen, connected unidentified third persons to the crime could have given credence to the defendant's plea of not guilty and would have had a tendency to influence the jury's verdict. The constitutional violation here, therefore, was not harmless beyond a reasonable doubt.

Although the defendant's statement concerning his coincidental presence at the Traveller's Inn at the same approximate time and place as the sexual assaults described by T might be likened to anecdotes about the ownership of the Brooklyn Bridge, he nevertheless was entitled to proffer direct testimony about the physical evidence tending to show misidentification, pursuant to subdivisions (1) and (4) of the rape shield statute. The legislature provided for exceptions to the rape shield statute for those rare instances in which one of the exceptions applies. A rare instance is present in the facts of this case. The legislature did not provide a blanket prohibition against the defendant's introduction of evidence of another man's semen found on the clothing or body of a complainant dependent on the state's choice not to present that evidence. It is our duty to follow statutory and judicial precedent even in those cases that reverse a conviction that is presumptively valid. "This decision directly affects only this defendant, but tomorrow's case, involving some other defendant, may depend upon the reasoning of this decision." *State v. Thurman*, 10 Conn. App. 302, 316, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

We conclude that the defendant is entitled to a new trial on the sexual assault and risk of injury charges.

## III

## THE DEFENDANT'S FORMER COUNSEL AS STATE'S WITNESS

The defendant claims that the court improperly allowed the state to call attorney Wesley S. Spears, the former counsel for the defendant, as a witness to prove the charge of failure to appear in the first degree, without first conducting a hearing to show the compelling need for the testimony. The defendant also claims that the state improperly used the counsel's testimony to bolster its case on the other charges against the defendant because the court allowed the state to argue that the charge of failure to appear in the first degree showed a consciousness of guilt of the other charges. The defendant seeks review of his unpreserved claim that the use of the testimony of his former attorney to obtain the conviction is a violation of the defendant's sixth and fourteenth amendment rights. He seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40, or the plain error doctrine; Practice Book § 60-5; or the court's supervisory powers. The state argues that the claim is not constitutional, that the record is inadequate for review, and that the claim does not rise to the level of necessitating plain error review and involves a simple evidentiary, discretionary ruling.

In order for either side in a criminal case to call a prosecutor or a defense attorney to testify, who is or was involved in the case, a court must be satisfied that a compelling need for the testimony exists. *Ullmann* v. *State*, 230 Conn. 698, 718, 647 A.2d 324 (1994). The establishment of a compelling need requires the exercise of the court's discretion to determine whether the testimony is necessary and whether all other available sources of comparably probative evidence have been

exhausted. *State* v. *Thompson*, 20 Conn. App. 290, 295–97, 567 A.2d 837 (1989). If the court never exercised its discretion at all, the failure to do so might require a remand for that determination. See *State* v. *Colton*, 234 Conn. 683, 700, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996).

Although a court has broad discretion to allow such testimony, it must be vigilant in protecting the constitutional rights of the defendant when exercising that discretion. *Ullmann* v. *State*, supra, 230 Conn. 717–18 n.15. A trial court's exercise of its discretion is often tempered and guided by constitutional considerations such as the right to a fair trial. See *State* v. *McIntyre*, 250 Conn. 526, 533, 737 A.2d 392 (1999). The right of a prosecutor to call defense counsel as a witness is governed by the discretion of the court, but it is always necessary to make certain that the constitutional rights of a defendant are protected. *Ullmann* v. *State*, supra, 717–18 n.15. To the extent that the defendant's constitutional rights are implicated, we review his claim.

The question we must first resolve is whether the court exercised its discretion at all. "[D]iscretion . . . imports something more than leeway in decision-making. . . . It denotes the absence of a hard and fast rule or a mandatory procedure regardless of varying circumstances. . . . It means a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Corchado*, 200 Conn. 453, 464, 512 A.2d 183 (1986).

In this case, the granting by the court of the defendant's motion to dismiss Spears as his attorney and the granting of Spears' motion to withdraw as his attorney were actions of the court tantamount to the exercise of the court's discretion to allow the testimony of

Spears. The court, by the argument of counsel on the motions, was aware of the facts necessary to make a decision as to whether there was a compelling need for Spears' testimony. The court exercised its discretion in conformity " 'with the spirit of the law' " in the absence of a " 'mandatory procedure' . . . ." Id.

Spears stated to the court that he could not represent the defendant any longer because the defendant had filed a grievance against him, that Spears was a potential witness in the failure to appear case and that the defendant had been representing himself by filing motions. After the granting of the motions, the court allowed Spears to testify, and he did so, without objection by the defendant. Spears told the jury he was testifying under subpoena and that the defendant voluntarily had turned himself in to the police. The defendant cross-examined Spears, who testified that he had told the defendant's sister of the court's scheduled dates, with the expectation that she would tell the defendant when he had to be in court.

The defendant was able to use his former counsel's testimony to show that the defendant voluntarily subjected himself to the court's jurisdiction, after having initially failed to appear for trial. The testimony involved nothing that infringed on the attorney-client privilege because it involved no conversation between the two, did not concern the giving or receiving of legal advice, involved nothing about which there could be a reasonable expectation of privacy and involved nothing relating to possible harm to an attorney-client relationship, and the testimony was necessary to the state's case, and it involved nothing that gave. to the public the appearance of impropriety. See *Ullmann* v. *State*, supra, 230 Conn. 710–14.

The defendant, in addition to claiming that the court should have held a hearing to show the compelling

need for Spears' testimony, asserts that without that testimony, the court could not have charged the jury on consciousness of guilt, which the defendant claims had a large impact on the finding of guilty of the other crimes and that therefore a new trial on all of the charges is mandated. We disagree.

The state was able to use a consciousness of guilt argument in the prosecution of the other charges because the charge of failure to appear in the first degree was tried simultaneously with the sexual assault and risk of injury charges. There was nothing improper, however, about the consolidation for trial of the charge of failure to appear with the other counts. See *State* v. *Jennings*, 216 Conn. 647, 657–58, 583 A.2d 915 (1990). Although the charge of failure to appear in the first degree related to the other counts, the proof as to the sex crimes was distinct and not likely to confuse the jury, and the elements of the substantive underlying crimes and the elements of the charge of failure to appear in the first degree were distinct, uncomplicated and appropriately defined in the court's charge to the jury. No claim is made as to any impropriety in the court's charge as to the elements of the crimes.

The judgment is affirmed only as to the conviction of failure to appear in the first degree, and reversed as to the conviction of all other charges and the case is remanded for a new trial as to those charges only.

In this opinion FLYNN, J., concurred.

DRANGINIS, J., concurring in part and dissenting in part. I agree with part III of the majority opinion, which concluded that the state properly called the defendant's former counsel as its witness, and hence concur in affirming the conviction of the defendant, Carleton Smith, for failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1). I respectfully dissent, however, from part II of the majority's opinion

and thus would affirm the defendant's conviction on the sexual assault and risk of injury charges.

In part II of its opinion, the majority concludes that the trial court abused its discretion by not permitting the defendant to put into evidence the fact that semen was the genetic material that was determined not to belong either to the defendant or to the two purported assailants who allegedly acted with him. I disagree with the majority's conclusion that the defendant's claim as to the evidence of semen was of constitutional magnitude. I regard this claim as an evidentiary one to which the defendant has attached a constitutional tag. See, e.g., *State* v. *Wargo*, 53 Conn. App. 747, 753, 731 A.2d 768 (1999), aff'd, 255 Conn. 113, 763 A.2d 1 (2000). I also disagree that it was an abuse of discretion for the court to deny the defendant an evidentiary hearing under subdivisions (1) or (4) of the rape shield statute, General Statutes § 54-86f.

To defend against the charges against him, the defendant made a predictable, wholesale attack on the credibility of the alleged victim, T. The defendant asserted this defense in two parts: one, that T had made a prior, false allegation of sexual assault and, two, that the presence of semen from an unknown person was relevant to the issue of misidentification. I agree with the majority's conclusion that the defense theories of a prior false accusation and misidentification are unrelated. I agree also with the majority's disposition of the first prong of the defense, i.e., the prior false accusation, and that the court properly refused to disclose the contents of T's records from the department of children and families.

With respect to the issue of semen found on T's person and clothing, I believe that it is important to recognize that the defendant first claimed, as he did with respect to the claimed false accusation, that the pres-

ence of semen was relevant to T's credibility. Although the defendant made a colorable due process claim, the transcript reveals the true nature of the proffer of evidence. The court questioned defense counsel as to the relevance of the evidence and alluded to its earlier rulings that precluded the use of evidence of prior sexual activity to test T's credibility, which would, of course, violate the rape shield statute.[1]

Moreover, the state claimed that because no evidence of semen was offered, the question of whose semen was on T's person and clothing was not before the jury, and therefore evidence of semen was irrelevant. The court opined that the issue was "clear." The case law cited by the majority supports this conclusion. See *State* v. *Rinaldi*, 220 Conn. 345, 599 A.2d 1 (1991); *Demers* v. *State*, 209 Conn. 143, 547 A.2d 28 (1988); *State* v. *Cuesta*, 68 Conn. App. 470, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002). In those cases, the state had offered physical evidence of sexual contact that was in the nature of biological substances, creating an inference that the defendant in those cases was the source of the semen. If such evidence is before the jury and the jury is asked to infer that the defendant was the source of the semen, then evidence that the defendant was genetically excluded as the source of the semen is relevant and admissible.

In this case, however, the state offered no evidence regarding semen. The defendant's expert witness was unable to identify the source of the DNA that he had

---

[1] The court stated: "But when I ask you what's relevant and now you immediately are pointing to something that has already been ruled not to be relevant earlier on[ly] in a slightly different context. And so it seems to me that what you're trying to do is get this evidence in front of the jury so as to permit you to argue something that's not in the case, namely, that she was engaged in some kind of other, prior sexual conduct. I see no other purpose that would cause you to want to get that into the record in front of the jury."

analyzed, but he was able to conclude that it did not belong to the defendant or to his alleged accomplices. The court determined that the prejudicial effect of the substance, i.e., sperm heads, of the genetic material outweighed its probative force, as it pertained to T's credibility. The court, however, recognized that as to the defense of misidentification, the expert should be permitted to testify that the genetic material that was analyzed excluded the defendant. As a result of the court's ruling, evidence related to the DNA composition of the genetic material that pertained to the defendant's theory of misidentification was before the jury. What was not before the jury was the fact that the genetic material that had been analyzed was semen. The court had admitted evidence that was probative of the defense of misidentification while adhering to the mandate of the rape shield statute.

The only thing to be gained by identifying the genetic material that had been analyzed by the defendant's expert as *semen* was to degrade T by introducing evidence of the thirteen year old girl's sexual conduct with others. It appears that the court properly balanced the defendant's interest in presenting a defense of misidentification and protecting T's privacy, but ultimately provided all of the evidence necessary for the jury to evaluate the defense of misidentification.

The defendant's attempt to put the loaded word *semen* before the jury was not essential to his claim of misidentification, but an attempt to thwart the prior rulings of the court and to subvert the policy of the rape shield statute. Neither subdivision (1) or (4) of § 54-86f is implicated. At best, the court's ruling was harmless error.[2] The evidence relevant to the defense

---

[2] The absence of the defendant's DNA in the semen samples examined by the defense expert would appear to be consistent with the defendant's testimony that he had used a condom during his sexual encounter on the night in question.

of misidentification was admitted, so the court's ruling did not rise to the level of a constitutional violation that the defendant was unable to present a defense.

Furthermore, the state had a strong case, including the defendant's admission that he had had sex with a young woman whom he did not know. The jury disregarded the defendant's theory of misidentification and understandably so. The defendant asked the jury to believe that it was some other young woman whom he and his friends had picked up at the same place, partied with and had sexual relations with in the very same inn identified by T. The jury would have had to believe a perverse coincidence to credit his defense of misidentification. It would not be a stretch to consider such a claim to be an insult to common sense.

Because I have dissented from a portion of part II of the majority opinion and would affirm the defendant's conviction on all counts, I will address the last issue claimed by the defendant, that is, prosecutorial misconduct during closing argument. The state has argued that there was nothing improper about the closing argument. I have reviewed the prosecutor's closing and rebuttal argument and have considered it in view of the standard enunciated in *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004), and *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). On the basis of my review of the facts and understanding of the law, I conclude that the defendant's claim of prosecutorial misconduct is without merit.

For these reasons, I would affirm the judgment of the trial court.