LLOYD A. SATCHWELL *v.* COMMISSIONER
OF CORRECTION
(AC 29453)

Harper, Robinson and Stoughton, Js.

Argued October 29, 2009—officially released March 2, 2010

*Joseph Visone*, special public defender, for the appellant (petitioner).

*Robin S. Schwartz*, special assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cynthia S. Serafini*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Lloyd A. Satchwell, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court (1) improperly failed to conclude that his trial counsel had rendered ineffective

assistance and (2) improperly quashed a subpoena issued on behalf of the petitioner. We reject the petitioner's claims and affirm the judgment of the habeas court.

The following facts and procedural history underlie the petitioner's appeal. Following a jury trial, the petitioner was convicted of four counts of arson murder, one count of arson in the first degree and one count of conspiracy to commit arson in the first degree. The court sentenced the petitioner to a term of incarceration of 120 years without the possibility of parole. At the petitioner's criminal trial, the state presented evidence that the petitioner intentionally set fire to a three-story duplex in Waterbury that, at the time of the fire, was owned by his wife, Esmay Notice, and occupied by two families, tenants of Notice. Four tenants perished in the fire as a result of smoke inhalation. At trial, Notice implicated the petitioner in the crimes and was a key witness for the state.[1] Our Supreme Court affirmed the judgment of conviction following the petitioner's direct appeal. *State* v. *Satchwell*, 244 Conn. 547, 710 A.2d 1348 (1998).

In 2000, the petitioner filed a petition for a writ of habeas corpus. He subsequently filed the operative third amended petition, on which the habeas court based its judgment. The petitioner asserted several grounds in support of his petition. We need only discuss those grounds, and the court's resolution thereof, that are relevant to this appeal. Specifically, the petitioner alleged that his trial counsel, Alan D. McWhirter, rendered ineffective assistance in that "he failed to present evidence to show that [Notice] was given more consideration than she admitted to being given in exchange for testifying against the petitioner." Further, the petitioner

---

[1] Prior to the petitioner's trial, Notice pleaded guilty to one count of aiding and abetting arson in the first degree and one count of conspiracy to commit arson in the first degree. Following the trial, Notice was sentenced to a term of twenty-five years imprisonment.

alleged that his constitutional rights were violated because "[t]he state failed to disclose material favorable evidence related to the consideration given to [Notice] in exchange for [her] testifying against [him]." The respondent, the commissioner of correction, denied these claims, and, in a thorough memorandum of decision issued following a trial, the court rejected them on their merits in denying the petition. After the court granted the petitioner's petition for certification to appeal, this appeal followed.

I

We first address the petitioner's claim of ineffective assistance of counsel. The petitioner claims that the court improperly failed to conclude that McWhirter was ineffective in that he failed "to develop testimony" from a defense witness to support the defense theory that, prior to the criminal trial, the state had reduced the charges it had brought against Notice for the purpose of inducing her to testify against the petitioner. Specifically, the petitioner asserts that McWhirter was ineffective in that he failed adequately to prepare the defense witness for trial and cross-examination by the state. We decline to review the petitioner's claim.

At the habeas trial, the court heard evidence that, at the petitioner's criminal trial, McWhirter attempted to demonstrate that Notice's testimony was influenced by her self-interest. Specifically, McWhirter attempted to impeach Notice by arguing that she had been promised favorable consideration by the state in return for her trial testimony against the petitioner. To this end, McWhirter presented to the jury the state's original and substitute informations brought against Notice. Originally, the state had charged Notice with the commission of more serious crimes but filed a substitute information prior to the petitioner's trial charging her with less

serious crimes. In an attempt to impeach Notice's credibility, McWhirter presented testimony from Walter Scanlon, a former prosecutor, as an expert concerning plea negotiations in criminal trials.

The petitioner asserts that, during cross-examination of Scanlon and in argument, the prosecutor left the impression in the minds of the jurors that the state had reduced the charges on the basis of the evidence and not to induce Notice's cooperation with the state. The petitioner asserts that McWhirter was ineffective in that he did not provide Scanlon with sufficient information, including discovery materials, upon which to opine that the evidence would have supported Notice's conviction of the more serious charges and, presumably, that "the real reason the charges were reduced against [Notice] was to induce her to testify against the petitioner." The petitioner's claim on appeal is that McWhirter's failure to prepare Scanlon for his testimony as to his expert opinion on this issue vitiated the petitioner's defense strategy of demonstrating that Notice's testimony was influenced by the state's unilateral reduction in the charges against her prior to trial.

Our careful review of the record leads us to conclude that this precise claim related to McWhirter's preparation of Scanlon was neither raised in the petitioner's amended petition for a writ of habeas corpus, adequately addressed during the habeas proceeding or addressed in the court's memorandum of decision. During the habeas proceeding, the petitioner's counsel did not explore this subject during his examination of McWhirter. Scanlon was not called as a witness. As set forth previously, the petitioner alleged in his amended petition that McWhirter failed to present evidence to demonstrate that Notice had been given more consideration for her testimony than that to which she had admitted. This claim of an undisclosed agreement between the prosecutor and Notice is distinct from the

claim briefed on appeal, which is that McWhirter was ineffective in his preparation of Scanlon and that he failed to demonstrate via Scanlon that Notice's testimony was influenced by the prosecutor's *unilateral* decision to reduce the severity of Notice's charges prior to the petitioner's trial. As the respondent aptly argues, the petitioner has changed the very theory on which this claim rests. The theory relied on at trial was that McWhirter failed adequately to impeach Notice concerning an agreement with the state pursuant to which she testified at trial. The theory pursued here is based on unilateral action by the prosecutor.

"It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised." (Internal quotation marks omitted.) *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 194, 932 A.2d 467 (2007), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008). "This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the appellant's claim. . . . To review [the claim] now would amount to an ambuscade of the [habeas] judge. . . . This court is not compelled to consider issues neither alleged in the habeas petition nor considered at the habeas proceeding . . . ." (Citation omitted; internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 117

Conn. App. 120, 126, 977 A.2d 772, cert. denied, 294 Conn. 904, 982 A.2d 647 (2009). Because the petitioner did not distinctly raise this claim before the habeas court and the habeas court did not address it in its thorough memorandum of decision, we decline to review the claim.[2]

## II

Next, the petitioner claims that the court improperly quashed a subpoena issued on his behalf at the habeas trial. We disagree.

The following additional facts underlie the petitioner's claim. During the habeas trial, the petitioner's attorney issued a subpoena ordering Waterbury state's attorney John A. Connelly to appear at the petitioner's habeas trial, to testify as to relevant facts and to produce "all documents and all other items" in his possession related to the petitioner's earlier criminal prosecution as well as Notice's earlier criminal prosecution, both arising out of the Waterbury fire. Connelly represented the respondent during the petitioner's habeas trial; he

[2] The petitioner asserts that he had argued during the habeas proceeding that McWhirter was ineffective for failing to elicit evidence that the prosecutor had acted unilaterally in an effort to induce Notice to testify against the petitioner. Although we disagree with the petitioner, we note that even were this contention accurate, it would not alter the fact that the habeas court did not address this claim, leaving this court without any means of reviewing it. Furthermore, a consequence of the petitioner's failure to raise this claim before the habeas court is that the petitioner's analysis of this claim is wholly lacking with regard to reference to specific facts and evidence related to it.

Specifically, the petitioner asks this court to conclude that McWhirter was ineffective in that he failed to provide Scanlon with "necessary discovery materials" upon which he might have opined that Notice reasonably could have been convicted of the more serious charges that the state initially had brought against her. Although this appears to be the gravamen of the claim, the petitioner fails to discuss what evidence supports this claim. Thus, there is no discussion of what discovery materials are at issue or on what evidence the habeas court should have concluded that McWhirter's conduct with regard to Scanlon was constitutionally deficient.

also was the prosecutor during the petitioner's criminal trial.

Asserting that the testimony sought by means of the subpoena was privileged and that Connelly was counsel of record in the habeas proceeding, the respondent moved to quash the subpoena. Following a hearing, the court granted the respondent's motion without prejudice to the petitioner to renew his request to present Connelly's testimony. The court concluded that the petitioner had not demonstrated that Connelly was likely to present relevant testimony.

Later, the petitioner filed a motion for permission to call Connelly as a witness. Essentially, the petitioner claimed that Connelly's testimony was necessary to demonstrate that the state had filed a substitute information as to Notice, thereby subjecting her to less serious charges than those with which she had been initially charged, in exchange for her testimony at the petitioner's trial. These facts, the petitioner argued, were relevant to prove his claim, in the habeas proceeding, that the state improperly had failed to disclose such material evidence concerning Notice, which was favorable evidence to the defense. Following a hearing, the court denied the motion on several grounds. First, the court stated that it was not necessary to elicit evidence of the claimed agreement (the bringing of less serious charges in exchange for Notice's testimony against the petitioner) from Connelly. In this regard, the court observed that the petitioner had not called Notice as a witness at the habeas trial but had presented the testimony of her trial counsel. Notice's trial counsel testified that he was wholly unaware of any agreement between Connelly and Notice but believed that the prosecutor had acted unilaterally in bringing the substitute information against Notice.[3] Second, the court stated

---

[3] McWhirter testified as to similar facts at the habeas trial.

that, in its view, the prosecutor's subjective motivation for bringing the substitute information was immaterial to any of the claims raised in the habeas petition. In this vein, the court observed that, at trial, McWhirter adequately had brought before the jury the fact that, as a result of her trial testimony against the petitioner, Notice was to receive favorable consideration from the state at the time of sentencing with regard to her pending charges and effectively had argued that this fact was relevant in assessing Notice's credibility.

The petitioner's attorney later asked the habeas court to reconsider its decision. He argued that even if Connelly's decision to bring less serious charges against Notice was unilateral, and not part of an explicit agreement of which Notice had knowledge, there nonetheless was some type of an understanding between Connelly and Notice in an effort to procure her testimony. The petitioner argued that Connelly had left the impression in the minds of the jurors that there was no agreement between the state and Notice that involved the bringing of lesser charges but that the decision to bring lesser charges was warranted by the evidence. Denying the petitioner's motion to reconsider, the court focused on the fact that the petitioner had not presented any evidence, but only had speculated, that the filing of the substitute information by Connelly was part of an agreement with Notice, rather than a unilateral decision on Connelly's part. The court observed that the evidence presented, including the testimony of McWhirter and Notice's trial counsel, supported a finding that there had not been any agreement concerning the substitute information. The court observed that the petitioner had not called Notice as a witness at the habeas trial. The court also discussed the "serious ramifications" of a decision to permit the petitioner to call Connelly as a witness, given his role as counsel for the respondent, and concluded that the

mere speculation on the part of the petitioner that Connelly had entered into an undisclosed agreement with Notice did not warrant calling Connelly as a witness.

Challenging the court's ruling, the petitioner argues that Connelly's testimony was relevant to demonstrate that Connelly had brought the substitute information against Notice in an effort to entice her to testify against the petitioner during the criminal trial. The petitioner argues: "[T]he issue here is not whether there was a nondisclosed 'deal' with [Notice]. The issue here is whether [Connelly's] unilateral action (which the habeas court properly recognized as such) in reducing the charges against . . . Notice was done in an effort to entice her into testifying favorably for the state or whether he did it because he did not have sufficient evidence to prosecute her on the original information . . . ." The petitioner argues that this evidence was relevant to impeach Notice's credibility. The petitioner asserts that it was not sufficient that the jury understood that the charges against Notice had been reduced but that the jury should have been provided with an explanation from Connelly as to why he had reduced such charges. The petitioner argues that the court abused its discretion in quashing the subpoena because Connelly's testimony at the habeas trial, concerning his reason for reducing the charges against Notice, was relevant to demonstrating the prejudice caused to the petitioner at his criminal trial.

We review the court's decision to quash the subpoena under the abuse of discretion standard. See *Curry* v. *Burns*, 33 Conn. App. 65, 68–71, 633 A.2d 315 (1993). "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The salient inquiry is whether the court could have reasonably concluded as it did.

. . . It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds. . . . In determining whether there has been an abuse of discretion, much depends upon the circumstances of each case." (Citations omitted; internal quotation marks omitted.) *State* v. *Arbour*, 29 Conn. App. 744, 748, 618 A.2d 60 (1992).

In considering the petitioner's request to call Connelly as a witness, the court properly recognized that calling Connelly as a witness would have caused significant problems during the habeas trial because he was counsel for the respondent. See Rules of Professional Conduct 3.7 (generally prohibiting lawyer from acting as advocate in proceeding in which he or she likely to be necessary witness). The court, reasoning that permitting the petitioner to call Connelly likely would have resulted in a mistrial, carefully considered the reasons advanced by the petitioner for calling Connelly to the witness stand.[4]

---

[4] The respondent asserts that, in evaluating the court's decision to quash the subpoena, we should also consider Connelly's role as prosecutor during the petitioner's criminal trial. This court has stated: "In order for either side in a criminal case to call a prosecutor or a defense attorney to testify, who is or was involved in the case, a court must be satisfied that a compelling need for the testimony exists. . . . The establishment of a compelling need requires the exercise of the court's discretion to determine whether the testimony is necessary and whether all other available sources of comparably probative evidence have been exhausted." (Citation omitted.) *State* v. *Smith*, 85 Conn. App. 96, 112–13, 856 A.2d 466 (2004), aff'd, 280 Conn. 285, 907 A.2d 73 (2006).

The compelling need test has been applied in criminal jury trials as well as in criminal proceedings before the court. In *State* v. *Colton*, 234 Conn. 683, 702 n.17, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996), our Supreme Court observed that "the requirement of a threshold showing of compelling need is necessary to prevent frivolous attempts to call prosecutors or defense counsel as witnesses." Although the present action is civil, rather than criminal, in nature; *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970); we nonetheless are persuaded that the rationale for the compelling need test applies in the present habeas trial, as well. Thus, we readily conclude that, in light of our conclusion that the petitioner had not demonstrated that Connelly was likely to present

Certainly, the petitioner cannot demonstrate that the court abused its discretion if he cannot demonstrate that Connelly's testimony was likely to be relevant to a material issue. The petitioner's attorney set forth the basis for his request to subpoena Connelly. He explained that Connelly's testimony concerning the basis of his unilateral decision to bring a substitute information against Notice was relevant to proving one or more grounds in the petitioner's petition for a writ of habeas corpus. Having reviewed the amended petition, however, we, like the habeas court, are not persuaded that Connelly's testimony was likely to have been relevant to any ground raised in the amended petition. In his amended petition, the petitioner claimed that he was deprived of a fair trial because "[t]he state failed to disclose material favorable evidence related to the consideration given to [Notice] in exchange for [her] testifying against [him]." There was no evidence as to why Connelly brought the substitute information. Additionally, we fail to see how the reasons underlying Connelly's decision to bring a substitute information, if they were unbeknownst to Notice, constituted consideration for which Notice testified against the petitioner and, therefore, could logically have affected her decision to testify as she did. There was no evidence suggesting that Connelly and Notice had an agreement related to her testimony, let alone one that Connelly improperly had failed to disclose to the petitioner. Contrary to the position he took at the habeas trial, the petitioner no longer contends that any such agreement existed. This being the case, we do not conclude that Connelly's testimony was likely to be relevant to any issue at the habeas trial and, thus, that the petitioner had demonstrated any need for Connelly's testimony. Accordingly,

relevant testimony concerning a material issue in the habeas proceeding, he did not demonstrate that there was a compelling need for Connelly to testify.

we do not conclude that the decision to quash the subpoena reflected an abuse of the court's discretion.

The judgment is affirmed.

In this opinion the other judges concurred.