******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CHRISTOPHER SHAW
(SC 18207)

Rogers, C. J., and Norcott, Palmer, Zarella, Eveleigh,
McDonald and Espinosa, Js.*

*Argued May 13, 2013—officially released June 10, 2014*

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Stacey Haupt Miranda*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Christopher Shaw, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] and one count of risk of injury to a child in violation of General Statutes (Rev. to 2005) § 53-21 (a) (2).[2] The defendant claims that the trial court improperly (1) denied him the opportunity to introduce evidence of prior sexual conduct that was admissible under General Statutes § 54-86f,[3] commonly known as the rape shield statute, in violation of his constitutional rights to confrontation, to present a defense, and to due process, (2) admitted into evidence a laboratory report without the testimony of the analyst who performed the tests, in violation of the defendant's constitutional right to confrontation, (3) admitted into evidence a hearsay statement under the hearsay exception for spontaneous utterances, (4) permitted an emergency room physician to testify as an expert witness over defense counsel's objection, and (5) declined the defendant's request to give a jury instruction on the credibility of child witnesses. We reverse the judgment of the trial court and remand the case for a new trial.

I

The jury reasonably could have found the following facts. On January 28, 2006, the victim, A,[4] age eleven, was living with her mother, B, her fifteen year old brother, K, her eight year old sister, and the defendant in B's apartment in New Haven. Around 11 p.m. that evening, while A's older sister, M, was visiting the family, the defendant came home in search of his identification card (ID) so that he could go out to a club. The defendant believed that the ID was in his coat, but when B saw that he was intoxicated, she took the ID from his coat, without his knowledge, and hid it in her purse so that he would not go out.

After a minor altercation during which the defendant took B's purse and said he would not give it back until she gave him the ID, M retrieved the coat and handed it to the defendant. He then apologized for the argument and proceeded to leave the apartment, unaware that the ID no longer was in his coat. Shortly thereafter, B also left the apartment to drive M back to her home. After she dropped M off, she called her three younger children and asked A if the defendant had returned. When A replied that the defendant had returned in search of his ID but, after failing to find it, "stormed back out" looking for B, B decided to stay out for a while before returning home.

At approximately 1:20 a.m., B returned to the apartment. She immediately noticed that the defendant's boots were on the floor and his coat was on the sofa, where he normally slept. When she went to her bed-

room, she found the door closed and difficult to open because two large garbage bags filled with clothing had been pushed up against the other side. After she managed to open the door, she observed two shadows, one of which appeared to be on top of the other, near the head of the bed. Upon turning on the light, the shadows "jumped," and she saw the defendant sitting toward the foot of the bed and A sitting up in the middle. The defendant was wearing a shirt and appeared to have nothing on below his waist. A was wearing a nightgown, and her underwear was around her ankles. B immediately ran to the kitchen and called 911. When the police arrived shortly thereafter, she accused the defendant of raping A, and the police arrested him.

While the police detained the defendant in the living room, Officer Nancy Jordan questioned A in the kitchen. Jordan then accompanied A and B to the emergency department at Yale-New Haven Hospital (hospital), where A was examined by Mark Cicero, a physician specializing in pediatric emergency medicine. Emergency department personnel utilized a sexual assault evidence collection kit in accordance with the state protocol prescribed for alleged sexual assaults. See General Statutes § 19a-112a. Later that day, B went to the New Haven Police Department and gave a formal statement regarding the assault.

The defendant was charged with sexual assault in the first degree in violation of § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes (Rev. to 2005) § 53-21 (a) (2). A jury found him guilty of both offenses, and the trial court rendered judgment imposing a total effective sentence of thirty years, execution suspended after twenty years, with ten years probation. This appeal followed.

## II

The defendant first claims that the trial court improperly excluded evidence that was admissible under the rape shield statute in violation of his constitutional rights to confrontation, to present a defense, and to due process under the sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution. He claims that his constitutional rights were violated because, in order to rebut the inference that he was the cause of vaginal injuries to A that were identified and reported by Cicero, he should have been allowed to show an alternative source of the injuries and a motivation for A and B to fabricate the assault through the introduction of evidence that the defendant had caught A and her older brother, K, engaging in sexual intercourse three days earlier.[5] The state responds that the trial court properly excluded the evidence because the defendant failed to make an adequate showing of relevance. We agree with the defendant.

## A

A testified that, sometime after B left the apartment on the evening of January 28, 2006, to take M back to her home, the defendant entered A's bedroom, awakened her, and told her to go into the living room, where he directed her to remove her underwear. A then went with the defendant, while still clad in her nightgown, into B's bedroom, where they engaged in sexual intercourse on the floor and on the bed for thirty to forty-five minutes. A further testified that the defendant was on top of her and had put his penis in her vagina.

Cicero, the emergency department physician who subsequently examined A at the hospital, testified that A gave him a similar but more detailed account of what had happened in the bedroom that night. He testified that A told him that the defendant had put his mouth on her vagina and then had put his penis in her mouth and her vagina. With respect to A's physical condition, he testified that he observed no lesions or injuries on A's external genitalia but noted the presence of six superficial tears on the internal structures that lead into and surround the vagina, known as the "fossa navicularis" or "vestibular fossa." He opined that the injuries had been sustained within the past seventy-two hours and that it was "quite possible that they had been sustained within the last few hours" before Cicero's examination of A. He also testified that he had detected no semen, substance or debris on A that could be attributed to the defendant and had observed no other bruises or injuries on A's body. On cross-examination, he added that the vaginal tears were not likely to have been caused by consensual sexual intercourse and that A told him that she had not been exposed to any sexual activity within the past three days other than the alleged assault.

The defendant filed a motion two days before the start of the trial requesting the court's permission to present evidence that A had engaged in sexual intercourse with K three days before the alleged assault. The defendant explained that he wanted to introduce the evidence for use in his case-in-chief or to rebut evidence presented by the state concerning the vaginal tears identified by Cicero during his examination of A. The defendant offered the evidence under three exceptions to inadmissibility set forth in the rape shield statute. He offered the evidence under § 54-86f (1) to show that he was not the source of the vaginal tears. He also offered the evidence under § 54-86f (2) and (4) to challenge A's credibility and to establish a motive for her to fabricate evidence in support of her claim that he was the source of her injuries, which was that she wanted to conceal the fact that she had been having a consensual sexual relationship with K.

The following day, the court held a hearing on the

defendant's offer of proof. Defense counsel first discussed her reasons for seeking admission of the evidence. The state then objected on relevancy grounds. The state relied on the five part test articulated in *State v. Rolon*, 257 Conn. 156, 183–84, 777 A.2d 604 (2001), for determining the admissibility of prior sexual conduct evidence offered to demonstrate an alternative source of the victim's sexual knowledge where the victim may be confused over the identity of the perpetrator. The state argued that it did not believe that the defendant could satisfy the first two prongs of the test, namely, that A clearly had engaged in sexual activity with K and that the prior alleged conduct resembled the alleged conduct in the present case. Defense counsel responded that, in addition to the defendant's testimony, a social worker's report contained information that A had told the social worker that K and the defendant did not get along because the defendant had alleged that K was inappropriately touching A. Defense counsel thus urged the court, under the provisions of the rape shield statute, to accept the defendant's written offer of proof at that time and to hold an evidentiary hearing, outside the presence of the jury, for each of its proposed witnesses following commencement of the trial to determine whether the witnesses should be allowed to testify in support of the defendant's theory. The court responded that it was prepared to rule on the motion before commencement of the trial and that the issues could be revisited, if necessary, later in the proceedings. When the court suggested that the defendant testify that day as to the alternative source of A's injuries, counsel responded that the defendant was not prepared to testify and that his testimony, standing alone, would be insufficient to support his defense.

Following a recess, defense counsel changed her mind, and the defendant took the stand. The defendant testified in support of his offer of proof that, "[t]hree days before [he] was arrested," he observed a sexual encounter between A and K. He elaborated that, around 3 p.m. on January 25, 2006, before B returned home from work, he came out of the bathroom and noticed A and K in an adjacent room in "an awkward position" and engaged in "[i]nappropriate touching." As soon as A saw the defendant, she jumped out from in front of K. The defendant then set his cell phone to record mode, laid it down on a nearby table, and went to take a shower. The defendant later listened to the recording and heard what "sounded like intercourse, moaning, sex . . . ." After the defendant told A what he had done and let her listen to the recording, she admitted that she and K were "having sex" while the defendant was in the shower. The defendant also let B hear the recording after she came home from work and told her what he had seen. B then had a private conversation with A, during which A denied having sex with K. Following her conversation with A, B went with the defen-

dant to a department store and purchased a video surveillance camera.

The court asked if there was any further evidence the parties wanted to offer, and the state referred to certain information it had received from a testing laboratory during the court recess. According to the state, a laboratory technician had reported that certain recordings on the defendant's cell phone did not "match" what the defendant was claiming had been recorded while he was in the shower, but the technician was unable to testify in court at that time. Defense counsel objected to the evidence on the ground that she "[had] been asking for [the] cell phone information for [the past] nine months" and had never received it. Defense counsel also contended that the reported information would not be useful unless accompanied by information regarding the date of the recordings identified by the laboratory and whether the recordings had been made over the alleged recording of A and K. The trial court rendered no decision on the cell phone evidence, and the parties never referred to it during the subsequent proceedings.

In her final argument on the offer of proof, defense counsel reiterated that the prior sexual conduct evidence was essential to the defendant's right of confrontation and was admissible under the rape shield statute to explain (1) an alternative source of the vaginal tears that were purportedly caused within three days of Cicero's examination of A, and (2) the motivation of A and B to fabricate the alleged assault so that the defendant would be arrested and removed from the household and no longer privy to what was happening within the family. Defense counsel further stated that she would seek testimony from A and B, and that, if they denied the defendant's claims, their testimony would be subject to impeachment by the defendant's testimony. The state repeated its earlier argument that the defense had failed to prove under *Rolon* that the prior acts clearly had occurred and that they closely resembled the acts alleged in the present case, especially given A's claim that the defendant had engaged in both oral penetration and vaginal intercourse.

In an oral ruling on the motion the next day, the trial court initially noted that prior sexual conduct evidence must be relevant in order to be admissible. It then stated that the defendant's offer of proof did not support a continuing evidentiary hearing or admission of the proposed evidence because the defense had not made the required preliminary showing that the evidence sought to be explored in a further hearing was relevant.[6] The court concluded that the evidence was not relevant to a material issue in the case or necessary to the defense because the prior sexual conduct between A and K had not been clearly defined or shown to closely resemble the defendant's alleged conduct under the principles

articulated in *Rolon* and *State* v. *Kulmac*, 230 Conn. 43, 61–63, 644 A.2d 887 (1994). The court also concluded that the probative value of the evidence did not outweigh its prejudicial effect because it involved sex between siblings, and that a discussion of such conduct would not be allowed at trial. The court stated: "There is no reference to sibling sex among these children unless you say, Judge, I have to ask it, I will excuse the jury, and [I will] hear your offer at the time." The court then denied the motion.

Following a recess, the jury entered the courtroom and began hearing evidence. B was the third witness to testify. On cross-examination, defense counsel elicited testimony that (1) she and the defendant previously had considered each other "boyfriend and girlfriend" but had broken up several months prior to January 28, 2006, (2) she would sometimes leave K alone with the other children, (3) the apartment was not very soundproof, and she could hear voices in the adjacent bedroom from her own bedroom, (4) she saw only shadows when she first entered her bedroom at the time of the incident and thus did not actually see the defendant on top of A, (5) she saw the defendant sitting at the foot of the bed after she turned on the light, (6) she did not know if the defendant was wearing underwear, (7) A was wearing a nightgown when she was sitting on the bed, (8) the defendant did not try to leave the apartment after the incident, (9) she left the defendant alone with A when she went downstairs to open the door for the police, and (10) she never saw the defendant act inappropriately toward A during the many months he had lived with the family prior to January 28.

In the midst of this testimony, defense counsel requested the court's permission to ask B certain additional questions relating to the facts alleged in the defendant's motion to admit the prior sexual conduct evidence. Outside the presence of the jury, defense counsel explained that she wanted to ask B about the defendant's concern regarding the behavior of her children, whether B also was concerned about the behavior of her children, without getting into the reasons why, and whether B was so concerned about her children that she bought a video surveillance camera to monitor their behavior. Counsel argued that the answers to these questions would be relevant to B's motive, bias and interest in testifying against the defendant, apparently referring to the defendant's claim that A had sexual intercourse with K. The state objected on the ground that the proposed testimony was not admissible under the court's prior ruling, and, in any event, it was not relevant to B's testimony as to what she had observed in the apartment at the time of the alleged assault. The court agreed with the state and denied counsel's request, explaining that the suggested line of questioning had no bearing on, or relevance to, the issues in the case.

When the court reconvened three days later, the defendant filed a written motion for reconsideration of the trial court's ruling barring admission of the prior sexual conduct evidence.[7] The motion also contained a request for permission to present the testimony of the defendant, A, B and K in support of the defendant's claim of third party culpability for A's injuries. The defendant explained, as defense counsel had done in connection with the previous motion, that the theory of the defense was that A and B had contrived the accusation against the defendant to cover up his discovery that A was having sexual intercourse with K. The defendant thus sought to (1) question B about what the defendant had told her regarding the incident involving A and K, as well as her subsequent actions in arranging for the surveillance of her children, (2) question K about the source of A's injuries, the fact that K was alone with A during the three days before the alleged assault, and what he may have heard and seen on the date of the alleged assault, and (3) question A about having sexual intercourse with K, being alone with K during the three days before the incident, her awareness that the defendant had made accusations that she had sexual intercourse with K, and about whether the foregoing accusations motivated her to fabricate the claim against the defendant so that he would no longer be able to make future accusations.[8] The defendant argued that to rule otherwise would deny him his constitutional rights to present a defense, to testify, and to confront witnesses.

In its oral ruling on the motion for reconsideration, the court stated, with respect to K, that it was not barring the defense from calling anybody from testifying but that the testimony must be relevant and material to the issues in the case. The court asked defense counsel to explain the relevance of K's proposed testimony because it had not yet heard anything that would support counsel's position that the testimony was admissible. Defense counsel reiterated that K's testimony was intended to show that K had a sexual relationship with A three days before the alleged assault and that this was both the source of A's injuries and the motivation for A and B to cover up that relationship by making accusations against the defendant. The state characterized the proposed line of questioning as self-serving, and the court, after stating that it had heard the same argument before, denied the defendant's request to reconsider its prior ruling because "there's nothing coming into this court regarding any incestual relationships with this person and her brother, none." The court added that, if the defense wanted to bring K in "to make an offer of proof to preserve it for the appellate record," that would be up to counsel. The court repeated that the proposed testimony had no relevance or bearing on the issues in the case and that the only relevant evidence was evidence relating to what had happened

in B's bedroom in the early morning hours of January 29. The court characterized the evidence offered by the defense as "speculation and . . . hearsay and not admissible . . . ."[9]

Defense counsel then requested and was granted permission to make a record of the questions that she wanted to ask K if he was brought in to testify.[10] Thereafter, counsel also asked the court if she could make an offer of proof with respect to certain questions she wanted to ask A on cross-examination that might be covered by the court's denial of the initial motion to admit the prior sexual conduct evidence.[11] The court allowed counsel to put the questions on the record but denied counsel's request to cross-examine A, stating that the questions would improperly focus the jury's attention on areas that the court found immaterial, irrelevant, confusing, and in no way supported the defendant's theory of relevance. The court further explained that the rape shield statute protected those areas of inquiry and repeated that the focus should be on what had happened in B's bedroom during the early morning hours of January 29, and on the people who were there, namely, the defendant, A, B, and any other person who might have been in the room before B arrived. Accordingly, the defendant was unable to present his proposed defense that A's injuries were caused by sexual intercourse with K three days before the alleged assault.[12]

B

We begin our analysis with the standard of review. "It is well established that a trial court has broad discretion in ruling on evidentiary matters, including matters related to relevancy. . . . Accordingly, the trial court's ruling is entitled to every reasonable presumption in its favor . . . and we will disturb the ruling only if the defendant can demonstrate a clear abuse of the court's discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Cerreta*, 260 Conn. 251, 260, 796 A.2d 1176 (2002). If we conclude, however, that the evidentiary ruling was improper and that the evidentiary impropriety "is of constitutional [proportion], the state bears the burden of proving that the error was harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Osimanti*, 299 Conn. 1, 16, 6 A.3d 790 (2010).

"Whether such error is harmless in a particular case depends [on] a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a ten-

dency to influence the judgment of the jury, it cannot be considered harmless." (Internal quotation marks omitted.) *State* v. *Wilson*, 308 Conn. 412, 426, 64 A.3d 91 (2013).

With respect to the governing legal principles, "[i]t is well established that a defendant has the right to confront witnesses against him as guaranteed by the confrontation clauses of both our federal and state constitutions. . . . [T]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the [s]tate's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. . . .

"We are mindful, however, that the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . For example, the trial court has a right, indeed, [a] duty, to exclude irrelevant evidence. . . . The rules excluding evidence from criminal trials, however, may not be arbitrary or disproportionate to the purposes they are designed to serve. . . .

"We [likewise] recognize that, in cases involving sexual crimes, [t]he rape shield statute . . . was enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material. . . . [T]he state . . . [relies on] the legislative intent behind the rape shield statute in [seeking to exclude] the prior sexual abuse evidence in order to [protect] the victim's sexual privacy . . . [shield] her from undue harassment . . . and [enable her] to testify in court with less fear of embarrassment. . . . [Nonetheless], [a]lthough the state's interests in limiting the admissibility of this type of evidence are substantial, they cannot by themselves outweigh the defendant's competing constitutional interests." (Citations omitted; internal quotation marks omitted.) *State* v. *Rolon*, supra, 257 Conn. 174–76.

"In order to determine whether evidence of prior sexual abuse properly was excluded in the context of [a] sexual assault case, therefore, we refer to the strictures of Connecticut's rape shield statute. . . . [Section] 54-86f prohibits the admission of a victim's prior sexual conduct . . . unless such evidence is . . . offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of . . . injury, or . . . offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct . . . or . . . otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." (Internal quotation marks omitted.) Id., 178.

The rape shield statute "provides for a two step process before evidence proffered by a defendant as falling under one of the statute's exceptions may be admitted. First, if the defendant has satisfied his preliminary burden in his offer of proof to show that the evidence is potentially relevant, pursuant to the statute the trial court must conduct a hearing to determine the admissibility of the evidence. Second, [i]f, after [a] hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. . . .

"In the first step of this two part process, the defendant bears the burden of showing that the proffered evidence overcomes the presumption, inherent in § 54-86f, that evidence of the sexual conduct of a [sexual assault] victim is inadmissible and satisfies the statute's requirement that only evidence relevant to the case, rather than evidence relevant merely to demonstrate the unchaste character of the victim, be admissible. . . .

"If the trial court determines that the evidence is relevant and admissible under one of the exceptions enumerated in § 54-86f, the trial court must proceed to the second part of the two part process outlined in the statute. That is, the evidence is admissible only if its probative value outweighs the prejudicial impact on the victim. . . .

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . In considering whether evidence [is] sufficiently relevant to fall under one of the exceptions enumerated in § 54-86f, we have drawn a distinction between, on the one hand, evidence that is relevant to establish some portion of the theory of defense or rebut some portion of the state's case, which is admissible if the court determines that the probative value of the evidence outweighs its prejudicial impact on the victim, and, on the other hand, evidence that is offered as an impermissible attempt to establish the victim's general unchaste character [which is] prohibited by [§ 54-86f]." (Internal quotation marks omitted.) *State* v. *Crespo*, 303 Conn. 589, 602–603, 35 A.3d 243 (2012). "A clear statement of the defendant's theory of relevance is all important in determining whether the evidence is offered for a permissible purpose." (Internal quotation marks omitted.) *State* v. *Rolon*, supra, 257 Conn. 179. "When the trial court excludes defense evidence that provides the

defendant with a basis for cross-examination of the state's witnesses, [despite what might be considered a sufficient offer of proof] such exclusion may give rise to a claim of [a] denial of the right to confrontation and to present a defense." (Internal quotation marks omitted.) Id., 177.

We emphasize that, "[i]n order to carry [the] threshold burden of establishing relevance, a defendant must make an offer of proof[13] as a prerequisite to obtaining an evidentiary hearing to determine the admissibility of evidence . . . . The preliminary showing must be sufficient to demonstrate that the evidence sought to be explored in the evidentiary hearing is relevant . . . [and] to enable the trial court to make an informed ruling in connection with the exercise of its discretion on the issue." (Citation omitted; footnotes altered; internal quotation marks omitted.) *State* v. *Sullivan*, 244 Conn. 640, 649–50, 712 A.2d 919 (1998). When a defendant's core constitutional rights are implicated, a trial court is obligated to order, sua sponte, an evidentiary hearing on an offer of proof to determine whether the evidence is admissible. Id., 650–51 n.14.

C

Mindful of these principles, we first conclude that the trial court improperly excluded the proffered evidence of prior sexual conduct on relevancy grounds. The defendant's initial motion to introduce the evidence and his motion for reconsideration both made clear that he was not offering the evidence to suggest that A, who was eleven years old at the time of the alleged assault, had an unchaste reputation or character. Rather, the motions explicitly stated, and the defendant's allegations unmistakably demonstrated, that the evidence of prior sexual conduct was offered to show a possible alternative source of A's injuries under the exception set forth in § 54-86f (1), to challenge A's credibility under the exception set forth in § 54-86f (2), and to show a possible motivation on the part of A and B to fabricate the accusations against the defendant under the exception set forth in § 54-86f (4).

Moreover, "[§] 54-86f encompasses inferential as well as direct evidence of sexual conduct." *State* v. *Rinaldi*, 220 Conn. 345, 354, 599 A.2d 1 (1991). In the present case, the relationship between the proffered evidence, both inferential and direct, and the sexual conduct sought to be proved were such that a jury could conclude that A and K had engaged in sexual intercourse three days before the alleged assault. The defendant testified that he had observed A and K in an awkward position, had seen them inappropriately touching, had heard "moaning" and other sounds on the cell phone recording suggesting they were having sexual intercourse, had been told by A that she and K were "having sex" while the defendant was in the shower, and, after informing B about what he had seen and heard, had

accompanied B to a department store where she purchased a video surveillance camera. These allegations, if proven, could have allowed the jury to conclude that A's injuries were caused by K and not by the defendant. The evidence therefore was relevant under the rape shield statute because there was a visible connection between the facts alleged in the defendant's offer of proof and the facts on which the charges against him were based.[14]

Our conclusion that the evidence was relevant, however, does not end the inquiry. We also must examine whether the probative value of the evidence outweighed its prejudicial effect. The trial court ultimately concluded that the evidence was unduly prejudicial and, therefore, inadmissible because, in addition to failing the relevancy test, it involved sex between siblings.[15] We disagree.

Evidence should be excluded as unduly prejudicial when (1) it may unnecessarily arouse the jurors' emotions, hostilities or sympathies, (2) it may create distracting side issues, (3) it will consume an undue amount of time, or (4) one party is unfairly surprised and unprepared to meet it. E.g., *State* v. *Rinaldi*, supra, 220 Conn. 356.

We first note that, when evidence is proffered under one of the exceptions in the rape shield statute to support an alternative theory concerning the source of the victim's injuries, it will almost always be deemed more probative than prejudicial because it implicates the defendant's constitutional right of confrontation. Thus, although incestual relationships may inspire a negative emotional response, the fact that A and K are siblings does not outweigh the probative value of evidence that they had engaged in sexual intercourse three days before the alleged assault because such evidence supported the defendant's claim that the sexual encounter between A and K could have been an alternative source of A's injuries and a motivation for A and B to accuse the defendant of sexual assault. Moreover, the potentially prejudicial effect of the evidence was lessened by the fact that its significance had nothing to do with the sibling relationship but, rather, with the fact that A's injuries may have resulted from sexual intercourse with someone other than the defendant three days before the alleged assault. Any prejudicial effect of the evidence also was limited because it was not overly graphic. Accordingly, we conclude that the probative value of the proffered evidence outweighed its prejudicial effect and that the trial court abused its discretion in precluding its admission.

To the extent the trial court concluded that the facts did not support a continuing evidentiary hearing or admission of the evidence because the prior sexual conduct had not been clearly defined or shown to closely resemble the alleged assault, we disagree. In

reaching that conclusion, the trial court relied on *Rolon*, in which the defendant claimed that "he was denied his constitutional rights to confrontation, to present a defense and to a fair trial when the trial court prohibited him from presenting evidence of [the victim's] prior sexual abuse where the factual similarities between the present and previous instances could have: (1) demonstrated an alternative source for [the victim's] sexual knowledge; and (2) resulted in [the victim's] confusion over the identity of the perpetrator." *State* v. *Rolon*, supra, 257 Conn. 160. To resolve that claim, we adopted the five part test first articulated by the Wisconsin Supreme Court in *State* v. *Pulizzano*, 155 Wis. 2d 633, 656, 456 N.W.2d 325 (1990), for determining whether a defendant has established "a constitutional right to present otherwise excluded evidence of a child [sexual abuse victim's] prior sexual conduct for the limited purpose of proving an alternative source for sexual knowledge . . . ." *State* v. *Rolon*, supra, 183. Under that test, "[a] defendant must make an offer of proof to the trial court showing: "(1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to [the] defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect." (Internal quotation marks omitted.) Id., 184, quoting *State* v. *Pulizzano*, supra, 656.

We conclude that the trial court improperly relied on the test set forth in *Rolon* to preclude admission of the proffered evidence. Unlike in the present case, it was undisputed in *Rolon* that the victim had been subjected to prior sexual abuse by someone other than the defendant; see *State* v. *Rolon*, supra, 257 Conn. 161 and n.10; and, therefore, the defendant had no need to prove that the prior sexual abuse occurred. In *Rolon*, the abuse began when the victim was eight months old and continued until she was five years old; see id., 161–63; and the issue before the court was whether the victim, because of her very young age, could have confused the defendant with the perpetrator of the prior abuse because of similarities in the type of abuse and in the characteristics of the former perpetrator and the defendant, both of whom were older men and grandfather figures. See id., 159–60, 166–67.

In contrast, the defendant in the present case does not claim that A was confused as to the identity of the perpetrator because of prior sexual abuse similar to the sexual abuse at issue, but, rather, that she was not telling the truth about what had happened in the early morning hours of January 29. Thus, insofar as the trial court excluded the proffered evidence by relying on the first two prongs of the *Rolon* test, which require that "the prior acts clearly occurred" and that "the acts closely resembled those of the present case"; (internal quotation marks omitted) id., 184; its reliance was mis-

placed because the defendant's theory that A had sexual intercourse with K three days before the alleged assault does not fall within the exception in the rape shield statute described in *Rolon*, which is applicable to evidence admitted for the limited purpose of proving an alternative source of sexual knowledge.[16] See *State* v. *Brisco*, 84 Conn. App. 120, 138–39, 852 A.2d 746 (rejecting application of *Rolon* test because source of sexual knowledge not at issue), cert. denied, 271 Conn. 944, 861 A.2d 1178 (2004).

The state argues that the trial court properly declined to admit the proffered evidence because the defendant failed to allege facts that would have supported a finding that the "inappropriate touching" and recording of the "moaning" he attributed to A and K was capable of causing A's injuries, which Cicero testified were the likely product of nonconsensual, forcible penetration of A's vagina. The state thus contends that only by means of impermissible speculation could the jury have found that A's injuries were the result of prior sexual conduct with K. We disagree.

We first note that Cicero did not testify before the trial court rendered its decision on the defendant's motion, and, therefore, the court did not consider his testimony in reaching its conclusion as to whether the jury should have been allowed to hear the defendant's proposed defense. Even if Cicero had already testified, however, the defendant made allegations in support of his defense other than those concerning the inappropriate touching and the cell phone recording. These allegations included that A admitted, after he allowed her to hear the cell phone recording, that she and K were "having sex" while the defendant was in the shower, that the defendant informed B about this incident, and that B purchased a video surveillance camera after the defendant had informed her. As previously noted, the rape shield statute "encompasses inferential as well as direct evidence of sexual conduct." *State* v. *Rinaldi*, supra, 220 Conn. 354. Consequently, the defendant was not required to allege more detailed facts or rebut possible contrary evidence or testimony in order to satisfy his burden of showing that the proffered evidence was relevant and admissible.[17]

We therefore conclude that the trial court abused its discretion by improperly precluding the defendant from introducing the prior sexual conduct evidence in violation of his federal and state constitutional rights to confrontation. We further conclude that, if the evidence had been admitted, the outcome of the trial could have been different because it was related to issues of critical importance in the case, namely, the source of A's injuries, her credibility, and her motivation for accusing the defendant of sexually assaulting her. Moreover, the state's case was not particularly strong because there was no direct evidence that A was sexually assaulted

by the defendant. B testified on cross-examination that, when she first entered her bedroom at the time of the alleged assault, she saw only shadows and thus did not actually see the defendant on top of A or having sexual intercourse with A. B also testified that the defendant was sitting at the foot of the bed and that A was wearing a nightgown and sitting in the middle of the bed when she turned on the light, that she assumed but did not know if the defendant was wearing underwear, that the defendant made no attempt to leave the apartment following the incident, that she sometimes left K alone with her other children, and that she never had seen the defendant acting inappropriately toward A during the many months he had lived with the family prior to January 28. Furthermore, if the jurors heard and believed the defendant's testimony regarding A and K, they also might have believed that A and B were motivated to fabricate the alleged assault for the purpose of removing the defendant from the household and covering up A's and K's allegedly inappropriate behavior. Accordingly, the trial court's preclusion of the evidence was not harmless beyond a reasonable doubt,[18] and we reverse the judgment on that ground.[19]

The judgment is reversed and the case is remanded for a new trial.

In this opinion ROGERS, C. J., and NORCOTT, PALMER, EVELEIGH and McDONALD, Js., concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes (Rev. to 2005) § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[3] General Statutes § 54-86f, which pertains to the admissibility of evidence of sexual conduct, provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach

the credibility of the defendant if the defendant elects to testify as part of the defense."

[4] In accordance with our policy of protecting the privacy interests of victims of the crimes of sexual assault and risk of injury to a child, we decline to identify the victim or others through whom the identity of the victim may be ascertained. See General Statutes § 54-86e.

[5] We note that the issue at trial was whether the prior sexual conduct had occurred within seventy-two hours, or three days, before the alleged sexual assault, and not within forty-eight hours, as the defendant suggests in his brief.

[6] To the extent the dissent claims that the defendant satisfied his preliminary burden of proof under the first step of the two step process set forth in § 54-86f and that the trial court held an evidentiary hearing, as required under the second step, it misconstrues the record. Accordingly, any of the dissent's conclusions that are based on this misunderstanding are necessarily suspect. For example, the dissent's conclusion that there was a "disconnect between what was proffered in [the defendant's] motion and what was presented to the court during the hearing"; footnote 8 of the dissenting opinion; apparently because the defendant was the only witness to testify, is without merit because the trial court decided not to allow a further hearing in which the defense could have questioned A, B and K about what had happened three days before the alleged assault. Moreover, even if the dissent is correct in concluding that the trial court conducted such a hearing, the defendant should have been allowed to present his theory as to an alternative source of A's injuries for the reasons set forth in part II C of this opinion.

[7] The evidence to which the motion referred was the defendant's proposed testimony that he observed A and K engaging in inappropriate sexual behavior three days before the alleged assault, that he recorded A and K, that the recording was consistent with the sound of persons engaging in sexual intercourse, that he confronted A with the recording, that she admitted to the defendant that she had just had sexual intercourse with K, that he told B about A's admission, and that previous statements by B confirmed that she would testify that the defendant had told her about these events.

[8] The defendant also sought permission to query A and B regarding A's sexual relationship with another older brother two years earlier, which A admitted but is not relevant to the defendant's claim regarding the admission of the prior sexual conduct evidence involving A and K.

[9] Thus, despite the trial court's prior statement that it was not barring anyone from testifying, its ruling that the evidence proffered by the defendant was irrelevant and immaterial prevented the defendant from calling A, B and K to testify at a further evidentiary hearing regarding the facts alleged in support of his defense.

To the extent the dissent disagrees with this conclusion, it distorts the record. The trial court made clear that it would not allow the jury to hear any testimony by A, B and K relating to any sexual conduct between A and K because the only relevant evidence, in the view of the court, was evidence relating to what had happened in B's bedroom in the early morning hours of January 29. Given that decision and other repeated statements by the court that the defendant's allegations as to what had happened between A and K three days earlier were irrelevant and immaterial, the defendant's only remaining option was to place the questions he wanted to ask A, B and K on the record for appellate review, which defense counsel proceeded to do.

Moreover, whether the court would have allowed defense counsel to query A, B and K about sexual conduct between A and K *outside* the presence of the jury, as the dissent claims; see footnote 20 of the dissenting opinion; is of no significance. Following commencement of the trial, when defense counsel stated that she wanted to call K as a witness, the court reiterated that any testimony regarding what had happened three days before the alleged assault was irrelevant and would not be admitted at trial but that, if counsel wanted to preserve K's testimony for appellate review, she would be permitted to do so. The trial court thus had no interest in hearing K's testimony before making its decision on the defendant's motion for reconsideration, and K's testimony would have had no effect on the trial court's ultimate ruling. The dissent either overlooks or fails to appreciate this fact.

[10] The proposed questions to K included (1) whether K had sexual intercourse with A any time during the three days prior to the defendant's arrest, (2) whether K had an ongoing sexual relationship with A, (3) whether B was aware of the relationship, (4) whether the relationship was brought to B's attention by the defendant, (5) whether there was video surveillance in

the apartment, (6) whether K was aware that the video surveillance was instituted because the defendant had discovered and confronted A and K about their inappropriate sexual behavior, and (7) whether that was the reason why A accused the defendant of committing the alleged assault.

[11] The proposed questions to A included (1) whether the defendant ever had accused A of engaging in inappropriate behavior with K without saying what the inappropriate behavior was, and, if he had, (2) whether she was aware that the defendant and K did not get along, (3) whether she was angry at the defendant because of what he had said about A and K, (4) whether the defendant's claims were untrue, (5) whether A was aware that he had told B about the allegedly inappropriate behavior, (6) whether she knew how B had reacted to this information, (7) whether she thought the defendant would lie about her if he no longer was living in the apartment, and (8) whether she had had sex with anyone other than the defendant during the three days before the alleged assault.

[12] As the foregoing recitation of facts makes clear, the dissent's claim that the trial court did not prevent defense counsel from questioning A, B and K regarding the defendant's theory that K was the source of A's injuries, either during the initial offer of proof or later in the proceedings, is belied by the record. The court repeatedly stated that it would not allow testimony referring to sexual conduct between siblings and that the only relevant testimony was that which pertained to what had happened in B's bedroom in the early morning hours of January 29.

[13] "Offers of proof are allegations by the attorney . . . in which he represents to the court that he could prove them if granted an evidentiary hearing. . . . The purpose of an offer of proof has been well established by our courts. First, it informs the court of the legal theory under which the evidence is admissible. Second, it should inform the trial [court] of the specific nature of the evidence so that the court can judge its admissibility. Third, it creates a record for appellate review. . . . Additionally, an offer of proof should contain specific evidence rather than vague assertions and sheer speculation." (Citation omitted; internal quotation marks omitted.) *State* v. *Martinez*, 295 Conn. 758, 771, 991 A.2d 1086 (2010); see also *State* v. *Conrod*, 198 Conn. 592, 597, 504 A.2d 494 (1986). The offer of proof may be made in the absence of the jury by the testimony of a witness or by a good faith representation by counsel of what the witness would say if questioned. C. Tait & E. Prescott, Tait's Handbook of Connecticut Evidence (5th Ed. 2014) § 1.29.4, p. 94.

[14] In claiming that the proposed evidence was inadmissible, the dissent appears to focus solely on the defendant's allegation that A admitted that she and K were having sexual intercourse while the defendant was in the shower. The dissent specifically claims that "the majority relies on this inadmissible hearsay to determine that the proposed testimony was both relevant and more probative than prejudicial." Text accompanying footnote 12 of the dissenting opinion. We disagree that this evidence was not admissible. If A testified initially that she did not tell the defendant that she had had sexual intercourse with K while the defendant was in the shower, the defendant could have impeached her testimony with his testimony that she admitted to having sex with K after the defendant confronted her with the cell phone recording. See Conn. Code Evid. § 6-10 (prior inconsistent statements admissible to impeach credibility of witness). Indeed, defense counsel specifically argued this point during the offer of proof. Accordingly, the trial court incorrectly concluded, as does the dissent, that A's statement to the defendant was inadmissible.

Moreover, we do not rely solely on the defendant's testimony regarding A's admission in concluding that the defendant should have been allowed to present his defense that he did not sexually assault A and that he was not the cause of her injuries. Defense counsel intended to call A and K as witnesses in the defendant's case-in-chief and to query them directly as to what they had been doing while the defendant was in the shower. Lastly, and as the dissent itself acknowledges, there was other documentary and testimonial evidence suggesting that A and K had engaged in sexual intercourse three days before the alleged assault. See footnote 17 of this opinion. Consequently, this evidence was relevant and admissible under the exceptions in the rape shield statute cited by the defendant.

The dissent further claims that the trial court made "an unchallenged [evidentiary] ruling" that the defendant's testimony regarding what A had told him was inadmissible hearsay. Footnote 11 of the dissenting opinion. The dissent again misreads the record. After counsel asked the defendant to describe A's response when she heard the cell phone recording, the state

objected on hearsay grounds, and defense counsel replied that A's response went to A's state of mind and also constituted an admission. The court then allowed the testimony, and the defendant stated that A had told him that a "couple [of] months" earlier, K had come into her room, that they had sexual intercourse at that time, and that they had been doing so ever since. The court immediately struck this testimony without further comment. Defense counsel next asked the defendant what A had said about the sounds on the cell phone recording, to which the defendant responded that A stated that she and K had sexual intercourse while the defendant was in the shower. When the state objected to this testimony, defense counsel noted that she had not finished her question, and the court allowed her to continue. Defense counsel next asked the defendant if he had done anything in response to A's admission. At that point, a brief discussion ensued between the court and the attorneys, and the question regarding A's response to the cell phone recording was played back for the court and counsel to hear. When the court asked the state if it objected to this testimony, the state told the court it would "*withdraw* [its] objection at [that] point." (Emphasis added.) Defense counsel then asked the defendant a series of questions as to what he had done after hearing A's admission. He replied that he had played the recording for B, that B had then questioned A about the recording, and that B subsequently went out to a department store with the defendant to purchase a video surveillance camera. On cross-examination, the state asked the defendant when he had learned that A and K were having sexual intercourse, and he replied that it was on the day he made the cell phone recording. During subsequent argument on the offer of proof, defense counsel stated that, if A and B did not confirm the defendant's version of events that day, they could be impeached by his testimony. The court ultimately concluded that the evidence was inadmissible because it was not relevant and that it would not allow any evidence involving sex between siblings. Accordingly, the trial court did not exclude the defendant's testimony regarding A's admission on hearsay grounds but on relevancy grounds.

[15] Even though the trial court denied the defendant's motion on relevancy grounds, it considered whether the proposed evidence was prejudicial, which is typically considered only *after* the court has accepted an offer of proof and conducted an evidentiary hearing to specifically address that issue.

[16] The trial court also relied on *State* v. *Kulmac*, supra, 230 Conn. 43. In that case, the defendant contended that "the multiplicity of people who sexually abused the victims created a risk of confusion between, and misidentification of, the various perpetrators." Id., 55. The defendant thus claimed that "the victims may have confused which person committed which act, and that precluding cross-examination [with respect to] this possibility violated his right to confrontation." Id. We concluded, however, that the issue was not of constitutional magnitude because "[w]hether there is a sufficient basis for a claim that a witness is confused, so as to permit cross-examination that would otherwise be inadmissible, is a question of fact that is properly left to the discretion of the trial court." Id. Moreover, the trial court in *Kulmac* had found that the victims did not appear confused and that the prior abuses were too remote in time from the abuses at issue to have caused any confusion. Id. Finally, the record did not support the defendant's claim in *Kulmac* that excluding evidence of prior abuses prevented him from eliciting evidence of the victim's bias and motive to testify to protect the other abusers. Id., 56. Accordingly, we determined that the trial court did not violate the defendant's right of confrontation when it precluded him from introducing evidence of prior sexual abuse by others. Id. In the present case, there is no claim by the victim of multiple incidents of sexual abuse, of confusion, or that the prior incidents of sexual abuse were too remote in time from the incident in question. The reasoning in *Kulmac* thus fails to support the trial court's decision in this case.

[17] We disagree with the dissent that, because some of the proposed evidence was inferential, "no relevant evidence [was] submitted to support the defendant's contention that K was the source of A's injuries." As this court noted in *Rinaldi*, the trial court may consider inferential evidence of sexual conduct in determining whether the proposed evidence is relevant. See *State* v. *Rinaldi*, supra, 220 Conn. 354. In addition, the defense planned to query A, B and K regarding the events that transpired three days before the alleged assault. Their testimony, which the trial court did not allow when the defendant made his offer of proof because it involved sex between siblings, could have corroborated the defendant's testimony, in whole or in part. Finally, after stating that the defendant must allege detailed facts to satisfy his preliminary burden of showing that the proffered evidence was relevant,

the dissent concludes that "the defendant proffered documentary and testimonial evidence to support his position that A and K had engaged in sexual intercourse three days prior to the incident for which he was charged and that his revelation of this inappropriate sexual contact between the siblings prompted A and B to fabricate the story that the defendant had sexually assaulted A so that they could hide the accusations. In the motion, [the defendant] identified a medical report and expert witness disclosure that indicated that A's injuries had occurred within three days of the [alleged assault], and a social worker's report [that] stated that B . . . informed [the social worker] that the defendant had made such accusations, as well as making the representation that a [video] surveillance camera had been purchased by B to monitor her children's behavior." (Footnote omitted.) The dissent has thus conceded that not all of the evidence the defendant intended to introduce would have been inferential and uncorroborated and, even more significantly, that the evidence was sufficiently detailed to satisfy the defendant's preliminary burden of proof.

[18] The dissent claims that "[t]his decision eviscerates the rape shield statute" because all a defendant now must do to overcome the heavy presumption against the admission of evidence pertaining to the prior sexual conduct of an alleged victim of a sexual assault is to state that "he *believes* that the victim had sexual intercourse with another person and that she made statements to him confirming this belief, without submitting or even proffering any evidence that the prior sexual conduct or the victim's alleged admission actually took place. A defendant can now concoct an unverified narrative, knowing or, as in the present case, having a good faith belief, that the victim will deny the unsubstantiated allegations"; (emphasis in original); thus "diluting the defendant's burden under the rape shield statute to the detriment of all victims of sexual assault." We disagree.

Putting aside the unnecessary hyperbole in which these sentiments are clothed, we previously have noted, and the dissent has concluded, that the defendant satisfied his preliminary burden of showing that the proposed evidence was potentially relevant to his defense. The only remaining issue, from the dissent's point of view, appears to be that the evidence was not sufficiently precise to prove conclusively that A engaged in sexual intercourse with K three days before the alleged sexual assault. The defendant, however, is not required to provide conclusive evidence at such an early stage in the proceedings. He simply must show that the proposed evidence is relevant and admissible and that its probative value outweighs its prejudicial effect.

The dissent appears to equate unverified narrative with untrue narrative, and to ask the trial court to determine whether the evidence is sufficient to convict the defendant. This understanding of the rape shield statute is incorrect. It is not within the province of the trial court to decide whether the evidence is sufficient to support the defendant's claim that he was not responsible for the victim's injuries. It is within the province of the jury to decide that question following the presentation of evidence by both parties. Accordingly, the dissent's fears are misplaced, and our decision today does not eviscerate the rape shield statute or dilute the defendant's burden because the statute, in addition to protecting the character and reputation of sexual assault victims, expressly protects a defendant's constitutional right to present a defense by permitting him to introduce relevant evidence of the victim's prior sexual conduct to establish that he was not the source of her injuries. See General Statutes § 54-86f (1).

[19] The defendant also claims that the trial court committed reversible error when it improperly (1) precluded defense counsel from cross-examining A regarding a prior, false claim of sexual assault, (2) precluded counsel from cross-examining A regarding her prior sexual knowledge, (3) admitted into evidence Officer Jordan's testimony regarding B's statement that the defendant raped A under the spontaneous utterance exception to the hearsay rule, (4) admitted into evidence a laboratory report without the testimony of the analyst who performed the tests, in violation of the defendant's constitutional right of confrontation, (5) permitted Cicero to give his expert opinion, over defense counsel's objection, in the absence of a foundation to testify as an expert, and (6) declined to give an instruction on the credibility of child witnesses. In light of our decision to remand the case for a new trial, we decline to review these claims. The first and second claims involve evidentiary matters over which the trial court exercises broad discretion. At the defendant's new trial, the court may make such determinations on the basis of the then existing circumstances. Therefore, to decide these issues as presented on appeal will not necessarily aid those determinations

at a new trial. The third claim is based on a factual determination by the trial court as to whether there was time for reflection between the startling occurrence and the spontaneous utterance; see *State* v. *Kirby*, 280 Conn. 361, 374, 908 A.2d 506 (2006) ("Whether an utterance is spontaneous and made under circumstances that would preclude contrivance and misrepresentation is a preliminary question of fact to be decided by the trial [court]. . . . The trial court has broad discretion in making that factual determination, which will not be disturbed on appeal absent an unreasonable exercise of discretion." [Internal quotation marks omitted.]); and it is not possible to predict how the trial court will rule at a new trial if the record should contain different or additional testimony as to how long it was after B discovered the defendant and A in her bedroom that she made her statement to Jordan. The fourth and fifth claims allege procedural improprieties that are unlikely to arise at a new trial, and the sixth claim raises an issue that will no longer be relevant in the new trial because the witness, A, will be at least eighteen years old.

We further note that, on retrial, testimony by A, B and K regarding the prior sexual conduct between A and K may be elicited only after a proper foundation has been established, most likely during the defendant's case-in-chief. See *State* v. *Lugo*, 266 Conn. 674, 700–701, 835 A.2d 451 (2003) (defense counsel's questions to state's witnesses on cross-examination regarding reputation of gang to corroborate defense theory that he lacked requisite intent to commit crime of attempted robbery lacked proper foundation because, until defendant had testified about his theory, which he had not yet done, any information concerning reputation of gang was irrelevant, and, consequently, trial court properly sustained state's objection to this line of questioning). Thus, insofar as the defense did not do this on direct examination of A in the defendant's trial, the defense could not have advanced its theory through its cross-examination of A.

———————————————